**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JON RAHN, Individually and on Behalf of All Others,<br><br>                    Plaintiff,<br><br>     v,<br><br>GENZYME CORPORATION and HENRI A. TERMEER,<br><br>                    Defendants | No.  1:09-cv-11267-GAO |
| VIVIAN OH, Individually and on Behalf of All Others,<br><br>                    Plaintiff,<br><br>     v,<br><br>GENZYME CORPORATION and HENRI A. TERMEER,<br><br>                    Defendants | No. 1:09-cv-11299-GAO |

**MEMORANDUM OF LAW IN SUPPORT OF THE NEW JERSEY BUILDING LABORERS PENSION AND ANNUITY FUNDS' MOTION FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF <u>LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..............................................................................................................................1

STATEMENT OF FACTS ...............................................................................................................2

ARGUMENT .....................................................................................................................................3

    I.    THE ACTIONS SHOULD BE CONSOLIDATED .................................................3

    II.    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF..............................3

        A.    The PSLRA'S Procedural Requirements........................................................4

        B.    Movants Are "The Most Adequate Plaintiffs"...............................................5

            (1)    Movants Have Timely Moved For Appointment As Lead Plaintiff .........................................................................................................5

            (2)    Movants Have The Largest Financial Interest ................................5

            (3)    Movants Otherwise Satisfy Rule 23 .................................................7

    III.    THE COURT SHOULD APPROVE MOVANTS' CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL ................................................................10

CONCLUSION................................................................................................................................11

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Andrews v. Bechtel Power Corp.*,
   780 F.2d 124 (1st Cir. 1985)..................................................................................................9

*Babcock v. Computer Associates International, Inc.*,
   212 F.R.D. 126 (E.D.N.Y. 2003)............................................................................................9

*In re Cendant Corp. Litigation*,
   264 F.3d 201 (3d Cir. 2001) ...................................................................................................5

*Greebel v. FTP Software, Inc.*,
   939 F. Supp. 57 (D. Mass. 1996)............................................................................................4

*Guckenberger v. Boston University*,
   957 F. Supp. 306 (D. Mass. 1997) .........................................................................................7

*Johnson v. Celotex Corp.*,
   899 F.2d 1281 (2d Cir.), *cert. denied*, 498 U.S. 920 (1990).......................................................3

*Kennedy v. Tallant*,
   710 F.2d 711 (11th Cir. 1983) ................................................................................................8

*Lax v. First Merchandises Acceptance Corp.*,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) .........................................................4

*Leech v. Brooks Automation, Inc.*,
   2006 U.S. Dist. LEXIS 90153 (D. Mass. Dec. 13, 2006) ...................................................5, 6

*In re NASDAQ Market-Makers Antitrust Litigation*,
   187 F.R.D. 465 (S.D.N.Y. 1998)..........................................................................................10

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004)....................................................................................5, 6, 7

*Priest v. Zayre Corp.*,
   118 F.R.D. 552 (D. Mass. 1988).............................................................................................8

*Rossini v. Ogilvy & Mather, Inc.*,
   798 F.2d 590 (2d Cir. 1986) ...................................................................................................7

*Swack v. Credit Suisse First Boston*,
   230 F.R.D. 250 (D. Mass. 2005).........................................................................................7, 9

### FEDERAL STATUTES

15 U.S.C. § 78j(b)...........................................................................................................................2

15 U.S.C. § 78t(a) ....................................................................................................................2

15 U.S.C. § 78u-4(a)(1) ...........................................................................................................4

15 U.S.C. § 78u-4(a)(3)(A) & (B) .........................................................................................4, 5

15 U.S.C. § 78u-4(a)(3)(A)(i) ..................................................................................................4

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................. *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .......................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ....................................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................................3, 10

Fed. R. Civ. P. 23 ..................................................................................................................1, 3

Fed. R. Civ. P. 23(a) .................................................................................................................7

Fed. R. Civ. P. 42(a) ..............................................................................................................1, 3

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733.................9

## INTRODUCTION

The New Jersey Building and Laborers Pension and Annuity Funds ("Movants") respectfully submit this memorandum of law in support of their motion for an Order: (i) consolidating the above-captioned actions pursuant to Fed. R. Civ. P. 42(a); (ii) appointing them to serve as lead plaintiff in the consolidated action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) approving their choice of Milberg LLP as lead counsel and Gilman and Pastor as Liaison Counsel in the consolidated action.

Pursuant to the PSLRA, the Lead Plaintiff is the movant with the largest financial interest in the litigation who also satisfies Rule 23's requirements regarding adequacy and typicality. This motion is made on the grounds that Movants are the most adequate plaintiffs, as defined by the PSLRA, to represent the interests of the purported class. Movants purchased Genzyme securities during the class period and their losses of $603,981 (*see* Rado Decl. Exs. A, B[1]) are, to Movants' knowledge, the greatest among purported class members and greater than those of any plaintiff who has brought suit or may have filed an application for lead plaintiff in these actions. Movants also satisfy the requirements of Fed. R. Civ. P. 23. Movants have retained competent and experienced counsel to prosecute this securities litigation and seek the Court's approval of this selection of lead counsel.

---

[1] References to the "Rado Decl." are to the Declaration of Andrei Rado in Support of the New Jersey Building Laborers Pension and Annuity Funds' Motion For Appointment As Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, filed herewith.

As further discussed below, Movants satisfy each of the requirements of the PSLRA and, therefore, are qualified for appointment as lead plaintiff in these actions.

## **STATEMENT OF FACTS**[2]

The above-captioned related actions are securities fraud class actions brought against Genzyme Corp. ("Genzyme" or "the Company"), and its President and Chief Executive Officer, Henri A. Termeer ("Termeer"). Each of the cases alleges substantially the same facts and legal theories of recovery. Specifically, plaintiffs allege that defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. §§ 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder, and that Termeer is liable as a "controlling person" under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The actions, which are brought on behalf of purchasers of Genzyme securities between June 26, 2008, and July 21, 2009, are based on defendants' materially false and misleading statements and omissions concerning Genzyme's manufacturing processes, demand for certain of its products, and its growth prospects, which artificially inflated the price of Genzyme securities.

Genzyme is a Cambridge, Massachusetts-based biotechnology company. Throughout the Class Period, defendants failed to disclose to investors that their manufacturing processes were not in compliance with relevant FDA regulations. Further, defendants concealed two instances of contamination at their manufacturing facilities. These instances of contamination reduced the Company's ability to produce one of its products, which in turn caused the Company to have difficulty fulfilling orders. Rather than acknowledge contamination as the reason for this

---

[2] These facts are taken from the complaint filed in *Rahn v. Genzyme,* 1:09-cv-11267-GAO (filed July 29, 2009).

shortfall in supply, however, defendants implied to investors that the reason was an increased demand for its product.

Ultimately, the Company was forced to temporarily suspend production in one of its plants, and to reduce its earning and revenue forecasts accordingly, causing a precipitous decline in the price of Genzyme securities and damaging Movants and the class.

## ARGUMENT

### I. THE ACTIONS SHOULD BE CONSOLIDATED

These actions involve class action claims on behalf of the purchasers of Genzyme securities and assert essentially identical claims. Consolidation is appropriate when there are actions involving common questions of law or fact. Fed. R. Civ. P. 42(a); *see Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990), *cert. denied*, 498 U.S. 920 (1990). That test is met here and the actions should be consolidated.

The allegations in the actions are virtually identical. The Class period is the same, the legal theories of recovery are the same, and the underlying facts are the same. Each case also alleges that Defendants' misrepresentations and omissions caused Genzyme securities to trade at artificially high prices during the Class Period, and that the revelation of the truth at the end of the Class Period caused the price of Genzyme stock to plummet, resulting in substantial financial losses to the various plaintiffs. Therefore, consolidation of the actions is proper.

### II. MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF

Movants should be appointed Lead Plaintiff because they have complied with all of the PSLRA's requirements, demonstrated the largest financial interest in this litigation and otherwise meet the relevant requirements of Fed. R. Civ. P. 23. As the presumptive Lead Plaintiff, Movants' selection of the law firms of Milberg to serve as Lead Counsel and Gilman and Pastor as Liaison Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), should be approved by the Court.

3

A.      **The PSLRA'S Procedural Requirements**

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the Class, within 20 days of filing the complaint, informing Class members of their right to seek appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed, above-captioned action caused notice to be published on July 29, 2009. *See* Rado Decl., Ex. C. The notice was published on *GlobeNewswire*, a nationally distributed wire service.[3]

Second, within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) & (B).

Within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

---

[3] Newswires have consistently been recognized as a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated business-oriented publication or wire services." *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii). *See generally Leech v. Brooks Automation, Inc.*, No. 06-11068-RWZ, 2006 U.S. Dist. LEXIS 90153, at *4 (D. Mass. Dec. 13, 2006); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004).

### B.     Movants Are "The Most Adequate Plaintiffs"

#### (1)     Movants Have Timely Moved For Appointment As Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), expires on September 28, 2009. Movants' application is thus timely. Movants have reviewed the complaint and are willing to serve as representative parties on behalf of the Class. *See* Rado Decl., Ex. A. In addition, Movants have selected and retained competent counsel to represent them and the Class. *See* Rado Decl., Exs. D and E.

Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff, and their selection of Milberg as Lead Counsel and Gilman and Pastor as Liaison Counsel, approved by the Court.

#### (2)     Movants Have The Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall adopt a rebuttable presumption that the most adequate plaintiff is the Class member or group of members who represent the largest financial interest in the relief sought by the action. *See Leech*, 2006 U.S. Dist. LEXIS 90153, at *4; *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001) (*quoting*

5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)). Here, the class period alleged is June 26, 2008 to July 21, 2009, inclusive. This is the period used to calculate Movants' financial interest in this action.

The PSLRA does not provide a method for determining the relative financial interests of Lead Plaintiff movants. However, Courts have employed a four-factor analysis in determining a movant's financial interest. "The four factors are: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs." *Leech,* 2006 U.S. Dist. LEXIS 90153, at *7. *See also Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 404 (*quoting Lax v. First Merchs. Acceptance Corp.*, No. 97-C-2715, 1997 U.S. Dist. LEXIS 11866, at *17 (N.D. Ill. Aug. 6, 1997)).

During the Class Period, Movants purchased 53,120 shares of Genzyme common stock at artificially inflated prices. *See* Rado Decl., Ex. A. Movants' net shares purchased, and net funds expended, during the Class Period were, respectively, 30,140 shares and $2,047,778. *See* Rado Decl. Ex. B. Finally, Movants incurred losses of $603,981.70. *See* Rado Decl., Ex. B. Therefore, Movants' financial interest under the four factor test can be expressed as follows:

| Movant | Total Shares Purchased During Class Period | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | Approximate Loss |
|---|---|---|---|---|
| NJ Building Laborers Pension | 17,040 | 26,790 | $1,787,298.71 | $493,762.68 |
| NJ Building Laborers Annuity | 5,940 | 3,350 | $260,480.01 | $110,219.02 |
| TOTAL | 53,120 | 30,140 | $2,047,778.72 | $603,981.70 |

As demonstrated herein, Movants—having invested and lost substantial sums in Genzyme stock—have a very large financial interest in this case. Movants satisfy all of the

6

PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). *See* Rado Decl., Ex. B.

### (3)     Movants Otherwise Satisfy Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two — typicality and adequacy — directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See generally Pirelli Armstrong Tire Corp.,* 229 F.R.D. at 412. As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

#### a.     Movants Fulfill the Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. "The typicality requirement is satisfied when the named plaintiff's injuries arise from the same events or course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims and those of the class are based on the same legal theory." *Swack v. Credit Suisse First Boston*, 230 F.R.D. 250, 260 (D. Mass. 2005) (quoting

7

*Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997); s*ee also Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp.*, 229 F.R.D. at 412.  Typicality does not require that there be no factual difference between the class representative and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical.  *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted).  Because the Plaintiffs seek to prove that Defendants "committed the same unlawful acts in the same methods against an entire class" the typicality requirement of Rule 23(a)(3) is satisfied.  *Kennedy v. Tallant*, 710 F.2d 711 (11th Cir. 1983).

Movants seek to represent a class of purchasers of Genzyme stock that have identical, non-competing and non-conflicting interests.  Movants satisfy the typicality requirement because, like all other Class members, they: (1) purchased or otherwise acquired Genzyme stock during the Class Period; (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered economic loss when the misrepresentations made to the market, and/or the information alleged to have been concealed from the market, were revealed, removing the inflation from Genzyme's stock price.  Thus, Movants' claims are typical of those of other Class members since their claims and the claims of other Class members arise out of the same course of events.

### b. Movants Fulfill the Adequacy Requirement

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." This standard for adequacy is met if it appears that (1) the named

plaintiffs have interests in common with, and not antagonistic to, the class's interests; and (2) the plaintiffs' attorneys are qualified, experienced and generally able to conduct this litigation. *Swack* at 266 ("the moving party must show first that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation.") (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)); *see also Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 131 (E.D.N.Y. 2003) (stating that the standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation).

As detailed above, Movant is an adequate representative of the Class because it shares common questions of law and fact with members of the Class and its claims are typical of the claims of other Class members. As demonstrated by the injury suffered by Movant, who acquired Genzyme stock at prices artificially inflated by Defendants' materially false and misleading statements, the interests of Movant are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between Movants' interests and those of the other members of the Class.

Moreover, Movants are a classic example of the sort of Lead Plaintiff envisioned by Congress in its enactment of the PSLRA —sophisticated institutional investors and fiduciaries with a real financial interest in this litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional

9

investors in class actions will ultimately benefit the shareholders and assist courts by improving quality of representation in securities class actions").

### III.  THE COURT SHOULD APPROVE MOVANTS' CHOICE OF LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class.  The Court should not disturb a Lead Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).  Movants have selected and retained Milberg to serve as Lead Counsel and Gilman and Pastor as Liaison Counsel for the Class.

Milberg possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors.  *See* Rado Decl., Ex. D.  Milberg has served as Lead or Co-Lead Counsel in many high profile class actions, recovering billions of dollars for investors and others harmed by corporate mismanagement, forcing a number of important corporate reforms.  Milberg currently serves as Lead Counsel or as chair of plaintiffs' executive committees in many high-profile securities class actions pending throughout the country.  Milberg has been appointed as lead or co-lead counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case.  Other cases in which Milberg was responsible for obtaining outstanding recoveries for investors include *Carlson v. Xerox Corp.*, No. 3:00-CV-1621 (D. Conn. 2000) (preliminary approval of $750 million settlement granted on March 27, 2008); *In re Tyco Int'l Ltd. Sec. Litig.*, MDL Docket No. 02-1335-B (D.N.H. 2002) ($3 billion settlement); *In re Nortel Networks Corp. Sec. Litig.*, No. 01-CV-1855 (RMB) (S.D.N.Y. 2001) ($1.1 billion settlement); *In re Lucent Techs., Inc. Sec. Litig.*, No. 00-CV-621 (AJL) (D.N.J. 2000) ($600 million settlement); *In re Raytheon*

10

*Co. Sec. Litig.*, 99-CV-12142 (D. Mass. 1999) ($460 million settlement); and *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02 C 7527 (N.D. Ill. 2002) ($215 million settlement).

Similarly, Gilman and Pastor, LLP has a national class action practice and has substantial experience, over nearly three decades, in securities, shareholder and class action litigation. The firm has represented defrauded investors of various types, including corporate shareholders, bondholders and noteholders, limited partnership investors and hedge fund investors, and has achieved substantial recoveries on their behalf.

Because there is nothing to suggest that the Movant or its counsel will not fairly and adequately represent the Class, or the Movant is subject to unique defenses, this Court should appoint NJ Building Laborers Funds as Lead Plaintiff and approve its selection of Milberg as Lead Counsel and Gilman & Pastor as Liaison Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Movants satisfy the requirements of the PSLRA for appointment as Lead Plaintiff in these actions and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). Movants respectfully request that the Court: (1) consolidate the above-captioned actions; (2) appoint Movants as Lead Plaintiff in the consolidated action pursuant to § 21D (a)(3)(B); and (3) approve their selection of Milberg as Lead Counsel and Gilman and Pastor as Liaison Counsel.

Dated: September 28, 2009            Respectfully submitted,

**GILMAN AND PASTOR, LLP**

By:  */s/* David Pastor

David Pastor
63 Atlantic Avenue, Third Floor
Boston, MA 02110
Tel.: (617) 742-9700

11

Fax:  (617) 742-9701
*Counsel for Movants the New Jersey Building
Laborers Pesion and Annuity Funds and Proposed
Liaison Counsel for the Class*

**MILBERG LLP**
Andrei Rado
Roland Riggs
One Pennsylvania Plaza
New York, New York 10119
Tel: (212) 594-5300
Fax: (212) 868-1229

*Counsel for Movants the New Jersey Building
Laborers Pension and Annuity Funds
and Proposed Lead Counsel for the Class*

**KROLL HEINEMAN, LLC**
Albert G. Kroll
Metro Corporate Campus I
99 Wood Avenue South
Suite 307
Iselin, New Jersey 08830
Tel.:    (732) 491-2100
Fax:    (732) 491-2120
*Counsel for Movants the New Jersey Building
Laborers Pension and Annuity Funds*