UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JON RAHN, | ) | No. 09-cv-11267-GAO |
|             Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GENZYME CORPORATION and HENRI A. TERMEER, | ) | |
| | ) | |
|             Defendants. | ) | |
| VIVIAN OH, | ) | |
| | ) | No. 09-cv-11299-GAO |
|             Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| GENZYME CORPORATION and HENRI A. TERMEER, | ) | |
| | ) | |
|             Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
THE GENZYME INSTITUTIONAL INVESTORS FOR CONSOLIDATION,
APPOINTMENT OF LEAD PLAINTIFF, AND APPROVAL OF
SELECTION OF LEAD COUNSEL**

GRANT & EISENHOFER P.A.
1201 N. Market St.
Wilmington, DE 19801
Tel:  (302) 622-7000
Fax:  (302) 622-7100

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas
New York, NY  10019
Tel:  (212) 554-1400
Fax:  (212) 554-1444

*Counsel for the Genzyme Institutional
Investors and Proposed Co-Lead Counsel for
the Class*

**TABLE OF CONTENTS**

                                                                                                     **PAGE**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT ............................................................................................................................ 6

    I.      THE GENZYME INSTITUTIONAL INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFF ............................................................................ 6

          A.      The Genzyme Institutional Investors Believe They Have The Largest Financial Interest In The Relief Sought By The Class ................... 7

          B.      The Genzyme Institutional Investors Satisfy The Requirements Of Rule 23 ........................................................................................................ 8

                1.      The Genzyme Institutional Investors' Claims Are Typical Of The Class's Claims ................................................................... 8

                2.      The Genzyme Institutional Investors Will Adequately Represent The Interests Of The Class ............................................. 9

          C.      The Court Should Approve The Genzyme Institutional Investors' Choice Of Counsel .................................................................................... 12

    II.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................... 14

REQUEST FOR ORAL ARGUMENT .................................................................................... 15

CONCLUSION ....................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ................................................................................13, 14

*Leech v. Brooks Automation, Inc.*,
   No. 06-CV-11068-RWZ, 2006 WL 3690736 (D. Mass. Dec. 13, 2006) .................. 7, 12, 14-15

*In re Lernout & Hauspie Sec. Litig.*,
   138 F. Supp. 2d 39 (D. Mass. 2001) ...............................................................................8, 9

*State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*,
   No. 06-CV-10040, 2006 WL 3827441 (D. Mass. Dec. 27, 2006) ...............................7, 8, 9, 12

*In re Tyco Int'l, Ltd.*,
   Nos. 00-MD-1335, 2000 WL 1513772 (D.N.H. Aug. 17, 2000) ..........................................8, 9

**STATUTES**

15 U.S.C. § 78u-4(a)(3)(A) ...............................................................................................6

15 U.S.C. § 78u-4(a)(3)(B) .................................................................................2, 6, 8, 12

**OTHER AUTHORITIES**

1 H. Newberg, *Newberg on Class Actions* §3.13 (4th ed. 2007) ......................................8

Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369,
   1995 WL 709276 ...........................................................................................................3

Fed. R. Civ. P. 42(a) ........................................................................................................14

S. REP. NO. 104-98 (1995), 1995 WL 372783 ................................................................3

Deka International S.A. Luxemburg ("DEKA"), the City of Edinburgh Council as Administering Authority of the Lothian Pension Fund ("Lothian"), and the Government of Guam Retirement Fund ("GGRF") (together, the "Genzyme Institutional Investors"), respectfully submit this memorandum of law in support of their motion (i) to be appointed as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (ii) for approval of their selection of the law firms of Grant & Eisenhofer P.A. ("Grant & Eisenhofer") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Co-Lead Counsel for the Class, and appointment of Berman DeValerio ("Berman DeValerio") as Liaison Counsel; and (iii) for consolidation of the related securities fraud class action lawsuits filed in this Court against Genzyme Corporation ("Genzyme" or the "Company").

## PRELIMINARY STATEMENT

These securities class action lawsuits arise from allegations concerning violations of the federal securities laws by Genzyme and its Chief Executive Officer Henri A. Termeer (collectively, "Defendants"). As alleged in the complaints before this Court, during the period from June 26, 2008 through July 21, 2009 (the "Class Period"), Defendants caused the prices of the Company's publicly traded securities to be artificially inflated by issuing materially false and misleading statements about the Company and concealing information that was highly material to the investing public. In particular, Defendants hid material information relating to serious manufacturing and safety problems at the Company's most important drug production facilities—problems that were only revealed to the investing public through a series of corrective disclosures culminating at the end of the Class Period. Defendants' misstatements artificially inflated the price of Genzyme securities and caused substantial damage to the Company's

investors.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also makes a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Genzyme Institutional Investors respectfully submit that they should be appointed as Lead Plaintiff because they are the "most adequate plaintiff" under the PSLRA. The Genzyme Institutional Investors believe that they have the largest financial interest in this action by virtue of, among other things, the approximately $8 million in losses they suffered as a result of Defendants' misconduct. As shown by the certifications submitted herewith, the Genzyme Institutional Investors collectively purchased 536,445 shares of Genzyme stock during the Class Period and suffered losses of $8,081,583 on a FIFO basis and $7,659,462 on a LIFO basis in connection with these transactions.[1]

Moreover, the relief sought by the Genzyme Institutional Investors is precisely what the framers of the PSLRA hoped to accomplish by enacting the PSLRA's lead plaintiff provisions – to have complex class actions arising under the federal securities laws controlled by institutional investors. As Congress noted in enacting the PSLRA, the statute was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because they "will represent the interests of the plaintiff class more effectively than class members with small amounts at

---

[1] *See* Certifications of DEKA, Lothian and GGRF ("Genzyme Institutional Investors Certifications"), attached as Exhibits A, B, and C, respectively, to the Declaration of Megan D. McIntyre In Support of the Motion of The Genzyme Institutional Investors For Consolidation, Appointment of Lead Plaintiff, and Approval of Selection of Lead Counsel ("McIntyre Decl."). In addition, charts setting forth calculations of Deka's, Lothian's and GGRF's losses are attached as Exhibits D, E, and F, respectively, to the McIntyre Declaration.

stake." Conference Report on Securities Litigation Reform, H.R. REP. NO. 104-369, at *34 (1995), 1995 WL 709276; S. REP. NO. 104-98, at *11 (1995), 1995 WL 372783. The Genzyme Institutional Investors, which collectively hold billions of dollars in assets, are exactly the type of large institutional investors envisioned by Congress as the most adequate lead plaintiffs in securities class action suits. As institutional investors, DEKA, Lothian and GGRF are accustomed to acting in a fiduciary capacity and their experience in financial and legal matters will substantially benefit the Class.

Further, the Genzyme Institutional Investors satisfy each of the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and, therefore, are qualified for appointment as lead plaintiff in this action. Thus, pursuant to the PSLRA's lead plaintiff provisions, the Genzyme Institutional Investors are presumptively the most adequate plaintiff and should be appointed Lead Plaintiff for the Class. Additionally, the Court should approve the Genzyme Institutional Investors' selection of Grant & Eisenhofer and Bernstein Litowitz as Co-Lead Counsel, and should appoint Berman DeValerio as Liaison Counsel.

## STATEMENT OF FACTS

Based in Cambridge, Massachusetts, Genzyme operates as a worldwide biotechnology company whose products and services are focused on rare inherited disorders, kidney disease, orthopedics, cancer, transplant and immune disease, and diagnostic testing. The Company's Genetic Diseases segment manufactures and distributes therapeutic products, including some of the Company's most important drugs, all of which are manufactured at its Allston, Massachusetts facility: Cerezyme, Fabrazyme and Myozyme.

As alleged in the complaints on file in this action, throughout the Class Period, the Company publicly disseminated statements reporting positive financial results and prospects for sales of Cerezyme, Fabrazyme and Myozyme, and the pending approval by the Food and Drug

3

Administration ("FDA") of Lumizyme—a new version of Myozyme—while concealing significant problems at its manufacturing facilities that materially impacted its ability to generate revenues from these important products. Specifically, after a month-long investigation, including two site visits to Genzyme's Allston facility in the fall of 2008, the FDA issued a list of inspection observations detailing practices that deviated from the FDA's Good Manufacturing Process ("GMP") standards. Genzyme hid the FDA's actions, despite the fact that the FDA would not approve Lumizyme unless and until the problems were corrected. The Company also concealed from investors two instances of contamination at its manufacturing facilities—a contamination incident at its Geel, Belgium manufacturing plant in September 2008 and a viral outbreak at the Company's Allston facility in November 2008—even though these incidents threatened Genzyme's ability to meet consumer demand for Myozyme.

In February 2009, the Company received two letters from the FDA informing the Company that the agency would not approve Lumizyme and that there remained significant problems at the Allston facility where Lumizyme is made. However, Genzyme did not disclose the FDA's letters until March 2, 2009, when it issued a press release and its Form 10-K that generally described the manufacturing issues raised by the FDA, notified investors that FDA approval of Lumizyme would be delayed until the FDA's concerns were fully addressed, and lowered its projections for Myozyme revenue in 2009. On this news, Genzyme's shares dropped by more than 7%. But the Company continued to conceal the contamination problems at the Belgium and Allston facilities, which had disrupted the supply of Myozyme and impacted revenues for the first quarter of 2009.

By April 2009, Genzyme's contamination issues had begun to impact the Company's ability to manufacture sufficient quantities of Myozyme to meet demand. When Genzyme's first

4

quarter earnings came in below analyst expectations, however, the Company continued to mislead investors, blaming the shortfall on unspecified supply constraints but failing to disclose that those supply constraints were the direct result of contamination problems.

On June 16, 2009, the Company shocked investors, announcing that a virus had contaminated the Allston plant and, as a result, it would be forced to halt production of Cerezyme and Fabrazyme. On this news, the Company's shares fell almost $3 per share, from close of $55.62 per share on a June 15, 2009 to $52.75 per share on June 16, 2099, a decline of over 5%. Then, on July 22, 2009, Genzyme slashed its earnings and revenue forecasts for 2009, including its revenue projections for Myozyme, Cerezyme and Fabrazyme, due to the impact of the Allston facility shutdown. This announcement prompted a one-day decline in Genyzme's share prices of another $4.70 per share, or 8.4%. As a result of these and other corrective disclosures, Genzyme's stock declined by more than 35%, erasing over $8 billion in shareholder value.

Following the disclosures revealing the problems at Genzyme's manufacturing facilities and the consequent market correction in prices for the Company's stock, two actions alleging violations of the federal securities laws were filed in this District. The first complaint—styled *Jon Rahn v. Genzyme Corp. et anno.,* No. 09-cv-11267-GAO—was filed on July 29, 2009. Pursuant to the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A)(1), a public notice of that action, attached as Exhibit G to the McIntyre Decl., was published that day. A subsequent action, captioned *Vivian Oh v. Genzyme Corp. et anno.*, No. 09-cv-11299-GAO, was filed on August 3, 2009.

The PSLRA permits any member of the class to move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same

claims has been filed. *See* 15 U.S.C. § 78u-4(a)(3)(A). The Genzyme Institutional Investors have satisfied this deadline by making this motion.

## ARGUMENT

I. **THE GENZYME INSTITUTIONAL INVESTORS SHOULD BE APPOINTED LEAD PLAINTIFF**

The Genzyme Institutional Investors respectfully submit that they should be appointed Lead Plaintiff because they are the movants "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). In determining which class member or members to appoint as lead plaintiff pursuant to the PSLRA, the Court must consider three factors: (1) which class members have either filed complaints or made motions in response to a notice of their right to seek appointment as lead plaintiff; (2) of the plaintiffs that have filed complaints or appropriate motions, which one has the largest financial interest in the litigation; and (3) whether the movant with the largest financial interest otherwise satisfies the criteria of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). If the movant with the largest financial interest satisfies the applicable Rule 23 criteria, it is presumed to be the "most adequate" plaintiff. *Id.* That presumption can be rebutted "only upon proof" that the movant "will not fairly and adequately protect the interests of the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Genzyme Institutional Investors have timely filed this motion in accordance with the statutory requirements, and believe they have the largest financial interest in the relief sought by the Class. Additionally, their claims are typical of those of the other class members, and they have the resources, expertise and willingness to be fully involved in this litigation and to obtain the maximum possible compensation for the Class. Accordingly, the Genzyme Institutional Investors should be appointed as Lead Plaintiff and their selection of Lead Counsel should be approved.

### A.  The Genzyme Institutional Investors Believe They Have The Largest Financial Interest In The Relief Sought By The Class

The Genzyme Institutional Investors believe they have the largest financial interest in the relief sought by the Class. Although the PSLRA does not mandate a particular method for calculating a movant's financial interest, courts have traditionally considered the following factors: "(1) the number of shares that the movant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *State Univ. Ret. Sys. of Ill. v. Sonus Networks, Inc.*, No. 06-CV-10040, 2006 WL 3827441, at *2 (D. Mass. Dec. 27, 2006) (*quoting In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3rd Cir. 2001)). *See also Leech v. Brooks Automation, Inc.*, No. 06-CV-11068-RWZ, 2006 WL 3690736, at *2-3 (D. Mass. Dec. 13, 2006) (considering similar four-factor financial interest test).

Here, the Genzyme Institutional Investors purchased 536,445 shares of Genzyme stock during the Class Period. *See* Genzyme Institutional Investors Certifications (McIntyre Decl. Exs. A, B and C). The total net funds that the Genzyme Institutional Investors expended during the Class Period was $23,175,463, and they suffered a collective loss of $8,081,583 on a FIFO basis and $7,659,462 on a LIFO basis on their Class Period transactions.[2] Accordingly, the Genzyme Institutional Investors believe they have the largest financial interest of any Lead Plaintiff movant and are presumptively entitled to appointment as Lead Plaintiff.

---

[2] Losses were determined by using the first-in, first-out ("FIFO") and last-in, first out ("LIFO") methods, limited by a "90-Day Average Look-Back Price," which is calculated by taking the average closing price of the stock in the 90 days immediately following the end of the Class Period (July 21, 2009, as alleged in the complaints on file in this action). In this case, that 90-day period has not expired, so losses were calculated based on the average closing price from July 21, 2009 through September 25, 2009 ($53.8686 per share). Charts reflecting the calculation of the losses of the Genzyme Institutional Investors are attached as Exhibits D, E, and F to the McIntyre Declaration.

### B. The Genzyme Institutional Investors Satisfy The Requirements Of Rule 23

Section 21D(a)(3)(B)(iii)(cc) of the PSLRA provides that the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(cc). Of the four prerequisites of class certification under Rule 23(a), only two – typicality and adequacy of representation – must be evaluated when appointing a lead plaintiff, because only those two criteria address the characteristics of the lead plaintiff. *See Sonus Networks, Inc.*, 2006 WL 3827441, at *2 (evaluating only typicality and adequacy); *In re Tyco Int'l, Ltd.*, Nos. 00-MD-1335, 2000 WL 1513772, at *5 & n.10 (D.N.H. Aug. 17, 2000). Additionally, this inquiry "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy," and "arguments by members of the purported plaintiff class as to why it [has] not should be considered only in the context of assessing whether the presumption has been rebutted." *Sonus Networks, Inc.*, 2006 WL 3827441, at *2 (*quoting In re Cendant Corp.*, 264 F.3d at 263-64). As discussed below, the Genzyme Institutional Investors satisfy both the adequacy and typicality requirements of Rule 23.

#### 1. The Genzyme Institutional Investors' Claims Are Typical Of The Class's Claims

The Genzyme Institutional Investors satisfy the typicality requirements of Rule 23. A proposed lead plaintiff's claims are typical of the claims of the class when its claims and injuries "arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class.'" *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (citation omitted). *See also* 1 H. Newberg, *Newberg on Class Actions* §3.13 (4th ed. 2007) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims").

8

Here, the Genzyme Institutional Investors' claims arise from the same course of conduct from which the claims of all other class members arise. Like the other members of the class, the Genzyme Institutional Investors are innocent victims of the defendants' fraudulent conduct who purchased Genzyme stock during the Class Period at prices they did not know to be artificially inflated. The Genzyme Institutional Investors' losses, like the losses suffered by the other members of the Class, arise from the defendants' misrepresentations regarding Genzyme's financial results and undisclosed problems at its manufacturing facilities, and from the resulting inflation of Genzyme's stock price. Moreover, the Genzyme Institutional Investors' claims arise from the same statutes and legal theories as all other class members. Thus, the Genzyme Institutional Investors' claims are in all respects "typical" of the claims of the class. *See Sonus Networks, Inc.*, 2006 WL 3827441, at *2 (movant made *prima facie* showing of typicality where there was "no indication that the circumstances of its losses [were] markedly different than those of other class members or [were] based on a legal theory that is not generally applicable"); *In re Tyco Int'l, Ltd.*, 2000 WL 1513772, at *6 (typicality requirement satisfied where movant's losses arose from same misrepresentations and omissions, and were based on same legal theory, as all other class members).

### 2. The Genzyme Institutional Investors Will Adequately Represent The Interests Of The Class

The Genzyme Institutional Investors also satisfy the adequacy requirement of Rule 23. This requirement is satisfied if the movant has "common interests and an absence of conflict with the class members and … [its] attorneys are qualified, experienced and vigorously able to conduct the litigation." *In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d at 46.

The Genzyme Institutional Investors easily meet the adequacy requirements. First, their interests are the same as those of other class members – *i.e.*, to hold the defendants liable for the

9

consequences of their violations of the federal securities laws and for the damages caused to investors who purchased Genzyme stock at artificially inflated prices during the Class Period. There are no facts which indicate any conflicts of interest between the Genzyme Institutional Investors and other class members.

Further, the Genzyme Institutional Investors each have the resources and sophistication to fulfill the statutory role of lead plaintiff as large, well-established institutional investors:

- DEKA is an investment and fund management company established under the laws of Luxembourg and is a subsidiary of DekaBank Deutsche Girozentrale AG, one of the largest German financial institutions and financial services providers with assets under management of more than $200 billion.

- Lothian is one of the largest pension funds in the United Kingdom, with over 170 associated employers and a scheme membership of over 67,000. The majority of employers in the fund are voluntary organizations, colleges and universities, non-profit organizations and other publicly funded bodies. As of July 31, 2009, Lothian had a fund value of £2.6 billion (or $4.2 billion).

- GGRF was established in 1951 to provide annuities and other benefits to its members, employees and retirees of the government of Guam and their beneficiaries. GGRF has approximately $1.4 billion in assets under management.

*See* Joint Declaration On Behalf Of The Genzyme Institutional Investors In Support Of Their Motion For Consolidation, Appointment Of Lead Plaintiff, And Approval Of Selection Of Lead Counsel ("Joint Declaration"), submitted herewith, at ¶¶ 2-4.

The Genzyme Institutional Investors, moreover, are each experienced in serving as lead plaintiffs in securities class actions. Indeed, Lothian and GGRF are currently together serving as lead plaintiff in the securities class action involving the fraud that led to the collapse of Lehman Brothers in *In re Lehman Brothers Equity/Debt Securities Litigation*, No. 08 Civ. 5523 (S.D.N.Y.). Further, Lothian has been recognized as an appropriate lead plaintiff by other courts and is currently serving in that role in *City of Edinburgh Council on Behalf of the Lothian Pension Fund v. Vodafone Group Public Co.*, No. 07 Civ. 9921 (S.D.N.Y.), *City of Taylor*

*General Employees Retirement System v. Sanofi-Aventis, et al.*, No. 07 Civ. 10279 (S.D.N.Y.) and *Reese v. Brown, et al.*, No. 08 Civ. 1008 (W.D. Wash), and GGRF is likewise prosecuting claims on behalf of investors in *General Retirement System of the City of Detroit, et al.* v. *The Wells Fargo Mortgage Backed Securities 2006-AR18 Trust, et al.,* Case No. 09 Civ. 1376 (N.D. Cal.). Similarly, DEKA has vigorously prosecuted the claims of investors as a lead plaintiff in securities class actions, as seen in the results achieved in, among other cases, *In re General Motors Securities Litigation,* Civ. No. 06-1749 (E.D. Mich.), in which settlements of over $300 million were obtained on behalf of the class.

Recognizing that they had each suffered significant losses as a result of the Defendants' fraud and shared common goals in serving as Lead Plaintiff, the Genzyme Institutional Investors held a conference call on September 24, 2009 to discuss the litigation and the opportunity to work together to successfully prosecute this action. *See* Joint Declaration at ¶ 5. That call included a discussion of strategy and procedures for directing this litigation and monitoring counsel to ensure that the litigation is handled efficiently and in cost-effective manner. *See id.* at ¶ 6. Based on the size of their losses and their common interests in ensuring the action is prosecuted diligently and in the best interests of investors, the Genzyme Institutional Investors decided to join together to seek appointment as Lead Plaintiff. *Id* at ¶¶ 6, 9.

The Genzyme Institutional Investors are fully informed of and appreciate the obligations of serving as Lead Plaintiff to pursue this action vigorously and in the best interests of shareholders, and are committed to fulfilling those responsibilities. *See* Joint Declaration at ¶¶ 7, 10. Further, each of the Genzyme Institutional Investors has ample resources, including dedicated staff with the legal, financial and/or organizational expertise to effectively oversee this proceeding and direct the actions of outside counsel. *See id.* at ¶ 8. The resources and

sophistication at the Genzyme Institutional Investors' disposal will serve the Class well, as those resources will permit the Genzyme Institutional Investors to closely monitor the litigation and prosecute the case in the Class's best interest. *See id.*

Finally, as explained below, the Genzyme Institutional Investors have chosen Grant & Eisenhofer and Bernstein Litowitz – firms with extensive experience and qualifications in securities litigation – as proposed Co-Lead Counsel for the Class. *See Sonus Networks, Inc.*, 2006 WL 3827441, at *2 (movant made *prima facie* showing of adequacy where it had "both the ability and incentive to represent the class vigorously" and had "retained experienced counsel to do so"). Accordingly, the Genzyme Institutional Investors satisfy the adequacy requirements of Rule 23.

### C. The Court Should Approve The Genzyme Institutional Investors' Choice Of Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Genzyme Institutional Investors have selected and retained counsel to represent the Class, subject to the Court's approval. In this case, the Genzyme Institutional Investors have selected Grant & Eisenhofer and Bernstein Litowitz as Lead Counsel for the Class—a choice that is granted great deference under the law. *See Leech*, 2006 WL 3690736 at *4 (*quoting In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305 (S.D. Ohio 2005)) ("Courts typically do not disturb a lead plaintiff's choice of counsel unless doing so is necessary to protect the interests of the class.").

Grant & Eisenhofer is among the preeminent securities class action law firms in the country and is currently serving as lead or co-lead counsel in complex securities fraud class actions involving, *inter alia*, Marsh & McLennan, Parmalat, Pfizer, Alstom, Raymond James, and Refco. Grant & Eisenhofer has been lead counsel in some of the largest securities class actions in history, and in the case with the largest recovery in the long history of the Delaware

12

Court of Chancery. Grant & Eisenhofer has achieved national recognition in representing institutional investors, particularly pension funds, in federal securities fraud and related litigation. *See* Grant & Eisenhofer Firm Biography (McIntyre Decl. Ex. H).

Bernstein Litowitz is likewise among the preeminent securities class action law firms in the country. *See* Bernstein Litowitz's Firm Biography (McIntyre Decl. Ex. I). Courts throughout the United States have recognized Bernstein Litowitz as a proper and appropriate lead counsel under the PSLRA, appointing the firm as lead or co-lead counsel in numerous complex securities class actions. *See id.*; *see also Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 190 (S.D.N.Y. 2006) (appointing Bernstein Litowitz as lead counsel and noting that "Bernstein Litowitz is a highly competent and respected law firm, specializing in securities class actions."). Bernstein Litowitz is currently serving as lead or co-lead counsel in numerous complex securities fraud class actions on behalf of investors in, *inter alia*, Bank of America, Washington Mutual, and Lehman Brothers. Bernstein Litowitz has also obtained substantial recoveries for class members in many of its past cases. For example, Bernstein Litowitz served as co-lead counsel in *In re Cendant Corporation Securities Litigation* in the District of New Jersey, in which settlements in excess of $3 billion in cash and extensive corporate governance reforms were obtained on behalf of the class. Bernstein Litowitz also served as co-lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-CV-3288 (DLC) (S.D.N.Y.), in which settlements totaling in excess of $6 billion were obtained for the class. Bernstein Litowitz also served as co-lead counsel in the successful prosecution of *In re Nortel Networks Corp. Securities Litigation*, No. 05-MD-1659 (LAP) (S.D.N.Y.), as well as numerous other significant securities class actions.

Not only are Grant & Eisenhofer and Bernstein Litowitz each well-qualified and experienced law firms in their own right, but they have a successful track record of working together cooperatively as co-lead counsel. The firms are presently serving as co-lead counsel in the Refco securities class action, in which over $140 million in settlements have been achieved to date and which continues to be actively prosecuted against numerous defendants. The firms have also achieved successful resolutions of numerous shareholder suits in the Delaware Court of Chancery where they have served as co-lead counsel. Accordingly, the Court should approve the Genzyme Institutional Investors' selection of Grant & Eisenhofer and Bernstein Litowitz as Co-Lead Counsel for the Class.

The Genzyme Institutional Investors further seek the appointment of Berman DeValerio as Liaison Counsel in these actions. Berman DeValerio is also among the top firms in the nation representing plaintiffs in securities class action litigation and provides representation for some 60 public and Taft-Hartley pension funds, including three of the five largest pension funds in the nation. *See* Berman DeValerio's Firm Biography (McIntyre Decl. Ex. J). Accordingly, the Court should approve Berman DeValerio as Liaison Counsel for the Class.

## II.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED

There are currently two securities class actions against Genzyme pending in this District—*Rahn v. Genzyme Corp.*, No. 09-cv-11267-GAO and *Oh v. Genzyme Corp.*, No. 09-cv-11299-GAO (the "Related Actions"). Consolidation is appropriate when, as here, there are actions pending in the same court that involve common questions of law or fact. *See* Fed. R. Civ. P. 42(a). Indeed, "consolidation is particularly appropriate in the context of securities class actions if the complaints are based on the same public statements and reports." *Glauser*, 236 F.R.D. at 186 (citations and internal quotation marks omitted). *See also Leech*, 2006 WL

3690736, at *4 (consolidating related putative securities class actions involving common questions of law or fact). Both Related Actions involve class action claims on behalf of investors who purchased publicly traded securities of Genzyme during the Class Period in reliance on the same materially false and misleading statements and omissions. The Related Actions should therefore be consolidated.

## REQUEST FOR ORAL ARGUMENT

The Genzyme Institutional Investors hereby request oral argument on the instant motion.

## CONCLUSION

For all of the foregoing reasons, the Genzyme Institutional Investors respectfully request that the Court (i) consolidate the Related Actions; (ii) appoint the Genzyme Institutional Investors to serve as Lead Plaintiffs for the Class in the consolidated actions; and (iii) approve the Genzyme Institutional Investors' selection of Grant and Eisenhofer P.A. and Bernstein Litowitz Berger & Grossmann LLP to serve as Co-Lead Counsel for the Class and Berman DeValerio as Liaison Counsel.

Dated: September 28, 2009

Respectfully submitted,

  /s/ Jeffrey C. Block
Jeffrey C. Block, BBO# 600747
Autumn W. Smith, BBO # 657418
BERMAN DEVALERIO
One Liberty Square
Boston, MA 02109
jblock@bermandevalerio.com
asmith@bermandevalerio.com
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
*Proposed Liaison Counsel*

Stuart M. Grant, BBO # 549471
Megan D. McIntyre
Diane Zilka
Shelly L. Friedland
GRANT & EISENHOFER P.A.
1201 N. Market St.
Wilmington, DE 19801
Telephone:   (302) 622-7000
Facsimile:   (302) 622-7100

Gerald H. Silk
Noam Mandel
BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP
1285 Avenue of the Americas
New York, NY  10019
Telephone:   (212) 554-1400
Facsimile:   (212) 554-1444

*Counsel for the Genzyme Institutional Investors and Proposed Co-Lead Counsel for the Class*