
Reed R. Kathrein (139304)
Peter E. Borkon (212596)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

David J. Cohen
SALTZ MONGELUZZI BARRETT & BENDESKY, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3985
Facsimile: (215) 575-3894
dcohen@smbb.com

*Attorneys for Proposed Lead Plaintiff Iron Workers' District Council (Philadelphia & Vicinity) Pension & Benefit Plans and Proposed Co-Lead Counsel*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETS

| | |
|---|---|
| JOHN RAHN, individually and on behalf of all others similarly situated, | No. 1:09-CV-11267-GAO |
| Plaintiff, | **REQUEST FOR ORAL ARGUMENT** |
| v. | |
| GENZYME CORPORATION and HENRI A. TERMEER, | |
| Defendants. | |
| VIVIAN OH, individually and on behalf of all others similarly situated, | No. 1:09-CV-11299-GAO |
| Plaintiff, | |
| v. | |
| GENZYME CORPORATION and HENRI A. TERMEER, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION OF ACTIONS, APPOINTMENT OF IRON WORKERS' DISTRICT COUNCIL (PHILADELPHIA & VICINITY) PENSION & BENEFIT PLANS AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL**

**TABLE OF CONTENTS**

**PAGE**

I. INTRODUCTION ..................................................................................................................1

II. PROCEDURAL HISTORY....................................................................................................2

III. SUMMARY OF FACTS ........................................................................................................3

IV. ARGUMENT..........................................................................................................................4

    A. The Court Should Consolidate the Related Actions ..................................................4

    B. IWDC Should Be Appointed Lead Plaintiff ..............................................................5

        1. The PSLRA Procedure for Lead Plaintiff Appointment Favors Appointment of IWDC ................................................................................5

        2. IWDC Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff ........................................................................................................7

        3. IWDC Has the Largest Financial Interest of the Plaintiffs Who Have Submitted Applications for Lead Plaintiff ....................................................8

        4. IWDC Satisfies the Requirements of Rule 23 ..............................................8

            a. IWDC's Claims Are Typical of the Claims of All the Class Members ..........................................................................................9

            b. IWDC Will Adequately Represent the Interests of the Class ..........9

    C. This Court Should Approve IWDC's Choice of Co-Lead Counsel........................10

V. CONCLUSION.....................................................................................................................11

## TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

*Coopersmith v. Lehman Brothers, Inc.*,
   344 F. Supp. 2d 783 (D. Mass. 2004) ............................................................................7

*Ferrari v. Gisch*,
   225 F.R.D. 599 (C.D. Cal. 2004) ....................................................................................8

*Garber v. Randell*,
   477 F.2d 711 (2d Cir. 1973) ............................................................................................5

*Gluck v. CellStar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ................................................................................7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1988) ........................................................................................9

*In re Equity Funding of America Sec. Litigation*,
   416 F. Supp. 161 (C.D. Cal. 1976) ................................................................................5

*In re Lernout & Hauspie Sec. Litigation*,
   138 F. Supp. 2d 39 (D. Mass. 2001) ....................................................................8, 9, 10

*In re Olsten Corp. Sec. Litigation*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................5

*Primavera Familienstiftung v. Askin*,
   173 F.R.D. 115 (S.D.N.Y. 1997) ....................................................................................5

*Miller v. Ventro Corp.*,
   No. 01-01287 *SBA*, 2001 U.S. Dist. LEXIS 26027 (N.D Cal. Nov. 28, 2001) ...........10

*Schriver v. Impac. Mortg. Holdings*, *Inc.*,
   No. SACV 06-31 CJC (RNBx), 2006 Dist. LEXIS 40607 (C.D. Cal. May 2,
   2006) ...............................................................................................................................8

*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ....................................................................................5

*Yousefi v. Lockheed Martin Corp.*,
   70 F. Supp. 2d 1061 (C.D. Cal. 1999) ...........................................................................5

## FEDERAL STATUTES

15 U.S.C. § 77z-1(a)(3)(B) ...................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................................... *passim*

Federal Rule of Civil Procedure 23 ....................................................................... 2, 6, 10

Federal Rule of Civil Procedure 42(a) ......................................................................... 2, 4

"Private Securities Litigation Reform Act of 1995 - Conference Report,"
    141 Cong. Rec. H1, 4039-52 ........................................................................................ 6

"Private Securities Litigation Reform Act of 1995 - Conference Report,"
    141 Cong. Rec. S1, 7933-62 ........................................................................................ 6

## I.  INTRODUCTION

The Iron Workers' District Council (Philadelphia & Vicinity) Pension & Benefit Plans ("IWDC" or "Movant") hereby moves to consolidate the two above-captioned, securities fraud class actions; to be appointed Lead Plaintiff in this action against Genzyme Corporation ("Genzyme" or the "Company") and Henri A. Termeer (collectively "Defendants") pursuant to the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), codified as Section 27(a)(3) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3) (2007), and/or Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3) (2007); and for approval of Movant's selection of the law firms Hagens Berman Sobol Shapiro LLP ("Hagens Berman") and Saltz Mongeluzzi Barrett & Bendesky, P.C. ("SMBB") as Co-Lead Counsel in this action.

IWDC is the most "adequate plaintiff" under the PSLRA.  As demonstrated in its attested certification, IWDC fully understands its duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action.  As described in the certification attached to the Declaration of Reed R. Kathrein, Ex. A, ("Kathrein Decl."),[1] IWDC has suffered a loss of $462,820.78 as a result of its purchase and/or acquisition of shares of Genzyme securities between June 26, 2008 and July 21, 2009 ("Class Period"). IWDC believes it has sustained the largest loss of any qualified investor seeking to be appointed as Lead Plaintiff.  In addition to evidencing the largest financial interest in the outcome of this litigation, IWDC's certification demonstrates Movant's intent to serve as Lead Plaintiff in this litigation, including Movant's understanding of the duties inherent to that role.[2]

---

[1] "Kathrein Decl." refers to the Declaration Of Reed R. Kathrein In Support of Iron Workers' District Council (Philadelphia & Vicinity) Pension & Benefits Plans Motion For Consolidation of Actions, Appointment As Lead Plaintiff And Approval of Lead Plaintiff's Selection of Co-Lead Counsel filed concurrently herewith.

[2] The relevant federal securities laws specifically authorize any class member seeking to be appointed lead plaintiff to either file a complaint or move for appointment as lead plaintiff.  *See* 15 U.S.C. § 77z-l(a)(3)(B)(i) (Claims under the Securities Act of 1933) and 15 U.S.C. § 78u-4(a)(3)(B)(i) (Claims under the Securities Exchange Act of 1934).  A certification of IWDC's transactions in Genzyme securities is attached as Exhibit A to the Kathrein Decl.

Moreover, IWDC satisfies the applicable requirements of both the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff." IWDC respectfully submits that Movant should be appointed as Lead Plaintiff in this action, and that this Honorable Court should approve Movant's selection of Hagens Berman and SMBB as Co-Lead Counsel in this action.

IWDC also moves to consolidate all related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, as these actions all involve the same facts and claims, including alleged violations of the federal securities laws and seek the same relied. It is therefore appropriate to consolidate these actions for all purposes under the caption "*In re Genzyme Corp., Securities Litigation*."

## II.   PROCEDURAL HISTORY

The first lawsuit against Defendants, *Rahn v. Genzyme Corporation, et al.*, Case No. 09-cv-11267 (GAO), was filed on July 29, 2009 in the District of Massachusetts by plaintiff, Jon Rahn, individually and on behalf of all persons or entities that purchased or otherwise acquired Genzyme securities between June 26, 2008 and July 21, 2009.[3] The gravamen of this Complaint is that Defendants violated federal securities laws by making false and/or misleading statements regarding Genzyme's financial condition. These false and/or misleading statements caused the price of Genzyme securities to be artificially inflated, and thereby resulted in the damages suffered by IWDC and the other members of the Class.

On July 29, 2009, after the filing of the initial action, John Rahn published a notice of pendency of that action over the national wire service *Globe Newswire*. Kathrein Decl., Ex. C (Published Notice). That notice advised Class members of the existence of the lawsuit and described the claims asserted.

Consistent with the terms of the PSLRA, IWDC timely filed this Motion for appointment as Lead Plaintiff within 60 days of the publication of the notice of pendency of the initial action in the *Globe Newswire* press release.

---

[3] To date, one other case has been filed against the Defendants in the District of Massachusetts. That case is entitled *Oh v. Genzyme Corp., et al.,* Case No. 09-cv-11299 (GAO).

2

## III.    SUMMARY OF FACTS

Genzyme is a Massachusetts corporation with its principal place of business in Boston, Massachusetts. Genzyme securities trade on the NASDAQ stock exchange under the symbol "GENZ".[4] Genzyme employs more than 11,000 workers and focuses on treating rare inherited disorders, kidney disease, orthopedics, transplant and immune disease and diagnostic testing. Many of Genzyme's products are not traditional pharmaceutical products, but "biologics." In 2008, Genzyme generated more than $4.8 billion in revenues from products and services.

This lawsuit results from conduct related to three of Genzyme's biologics manufactured by Genzyme's Genetic Disease segment: Cerezyme, Fabrazyme and Myozyme. Cerezyme is Genzyme's top revenue generating product. In 2008, Cerezyme sales accounted for $1.2 billion Genzyme's revenues. Fabrazyme is Genzyme's third largest revenue generator, responsible for $500 million of Genzyme's 2008 revenues. Myozyme, the third product relevant to this action, generated $296 million in revenues for Genzyme in 2008.

Plaintiffs allege that Genzyme concealed contamination issues at two of its manufacturing facilities that forced Genzyme to halt production of Cerezyme and Fabrazyme, resulted in a shortage of Myozyme, and delayed approval of a new formulation of another product called Lumizyme. Although these contamination issues, detailed in two separate Warning Letters from the FDA, directly impacted Genzyme's 2009 revenue projections, the Company failed to inform its investors of these material developments, of the existence of these Warning Letters, or that revenues from its top performing drugs would be directly impacted by these issues.

Defendants violated the Securities Exchange Act of 1934 when they issued a series of misrepresentations or omissions that actively concealed events related to the manufacture of Cerezyme, Fabrazyme and Myozyme - and the impact those events would have on its earnings. On July 21, 2008, Defendants belatedly disclosed this information to the market and the price of Genzyme common stock dropped 8.4% or $4.70.

---

[4] The facts are derived from the allegations in the class action complaint in *Rahn v. Genzyme Corporation, et al.*, Case No. 09-cv-11267 (GAO) filed on July 29, 2009.

3

Genzyme, and its CEO, Henri Termeer, are alleged to have made knowingly, intentionally or with reckless disregard for the truth, materially false and misleading statements that artificially inflated the price of Genzyme's common stock in violation of the Securities Exchange Act of 1934, all of which artificially inflated Genzyme's stock price and harmed the IWDC and members of the Class.

## IV.   ARGUMENT

### A.   The Court Should Consolidate The Related Actions

The PSLRA, requires courts to decide the question of consolidation be before appointing a Lead Plaintiff.  Consolidation of a securities class action is appropriate where the actions involve common questions of law and fact.  Fed. R. Civ. P. 42(a).[5]  The PSLRA also provides, among other things, for consolidation of substantially similar securities actions:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under [this chapter] has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under §21D(a)(3)(B)] until after the decision on the motion to consolidate is rendered.

15 U.S.C. § 77z-1(a)(3)(B)(ii) and 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Where more than one securities case is filed on behalf of a class based on substantially the same facts, the PSLRA establishes a two-step process for resolving lead plaintiff and consolidation issues.  The court "shall" first decide the consolidation issue and, thereafter, decide the lead plaintiff issue "[a]s soon as practicable." *Id*.

Given that it is necessary to select a lead plaintiff and lead counsel before the litigation can proceed, IWDC urges the Court to grant the consolidation motion as soon as practicable and consolidate these related actions under the first-filed case number.  A prompt determination is reasonable and warranted under Federal Rule of Civil Procedure 42(a), given the common questions of fact and law presented by the actions now pending in this District.

---

[5] Fed. R. Civ. P. 42(a): Consolidation. [When] actions involv[ing] a common question of law or fact are pending before the Court, the court may consolidate the actions.

Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper and routinely granted in actions such as this, where there are common questions of law and fact. *See Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1064 (C.D. Cal. 1999). Courts have recognized that securities class actions, in particular, are ideally suited to consolidation pursuant to Federal Rule of Civil Procedure 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *See, e.g.*, *In re Equity Funding of Am. Sec. Litig*, 416 F. Supp. 161, 176 (C.D. Cal. 1976); *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Indeed, ("[i]n securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact") and the parties will not be prejudiced. *Primavera Familienstiftung,* at 129. Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties - and generally also reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *Garber v. Randell*, 477 F.2d 711, 714 (2d Cir. 1973); *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001); *see also In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286 (E.D.N.Y. 1998).

The actions pending before this Court present virtually identical facts, allege violations of the same federal securities laws, name the same Defendants and will require the same discovery. The differences in the pending complaints are minor and will be resolved upon the filing of a consolidated complaint, all of which strongly suggests that consolidation is appropriate.

Accordingly, this Court should enter an Order that consolidates the related cases and all future related cases with the instant action.

**B.     IWDC Should Be Appointed As Lead Plaintiff**

    **1.     The PSLRA Procedure Favors IWDC's Appointment**

The selection of a Lead Plaintiff in a securities class action is a determination made by the Court as to which plaintiff is the most capable of adequately representing the Class. The Court:

>> (s)hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be ***most capable of adequately representing*** the interests of class members in accordance with this subparagraph.

15 U.S.C. § 77z-1(a)(3)(B)(i) and 15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).

The "most adequate plaintiff" assumes a rebuttable presumption that:

> The most adequate plaintiff in any private action arising under this subchapter is the person or group of persons that ---
>
> (aa) has either filed the complaint or made 'a motion in response to a notice under subparagraph (A)(i);
>
> (bb) ***in the determination of the court, has the largest financial interest in the relief sought by the class; and***
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added). Congress' goal in enacting the PSLRA was to "empower investors" to "have the greater control over class action cases." *See* 141 Cong. Rec. S1, 7933-62, at 7956 (daily ed. Dec. 5, 1995) (Private Securities Litigation Reform Act of 1995 – Conference Report).

IWDC is an institutional investor that has been injured by Defendants' fraudulent conduct. House Committee Chairman Thomas Bailey has emphasized that the PSLRA was designed to "put control of class action lawsuits back in the hands" of "real shareholders" – like IWDC. *See* 141 Cong. Rec. H1, 4039-52, at 4039 (daily ed. Dec. 6, 1995) (Private Securities Litigation Reform Act of 1995 – Conference Report). Congress has expressed a clear preference "for securities fraud litigation to be directed by large institutional investors." *Gluck v. CellStar Corp.,* 976 F. Supp. 542, 548 (N.D. Tex. 1997). Appointing IWDC as Lead Plaintiff would fulfill this preference. As set forth in its Certification, IWDC paid $3,120,166.38 to purchase 47,360 Genzyme shares during the relevant period. As a result of the wrongful conduct alleged, IWDC lost approximately $462,820.78 in connection with these transactions.

6

Only by a showing that a given Lead Plaintiff will not fairly and adequately represent the Class, or is subject to unique defenses that will render it incapable of adequately representing the Class, can this presumption be overcome. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Under this statutory test, IWDC is the "most adequate plaintiff" and should be appointed Lead Plaintiff on behalf of the proposed Class. IWDC has timely moved for appointment as Lead Plaintiff in accordance with the PSLRA, and has the willingness, resources and expertise to obtain excellent results for the class. Consequently, this Court should appoint IWDC as Lead Plaintiff and approve Movant's selection of Hagens Berman and SMBB as Co-Lead Counsel for the Class.

### 2. IWDC Has Complied With the PSLRA and Should Be Appointed Lead Plaintiff

Notice that this action was pending was published in the G*lobe* Newswire, a national business-oriented wire service on July 29, 2009. *See* Kathrein Decl., Ex C. IWDC filed the instant Motion seeking appointment as Lead Plaintiff within the applicable 60-day time period. Accordingly, IWDC meets the timeliness requirement of 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa); s*ee, e.g., Coopersmith v. Lehman Brothers, Inc.,* 344 F. Supp. 2d 783, 789 (D. Mass. 2004).

Moreover, IWDC has sustained a substantial loss from Movant's investment in Genzyme securities and has shown Movant's willingness to represent the Class by submitting a Certification detailing Movant's Genzyme transaction information. Kathrein Decl., Ex. A. As demonstrated by this Certification, IWDC is prepared to consult with counsel on a regular basis, prior to every major litigation event, and to direct the course of this litigation, with the benefit of its counsel's advice. In addition, IWDC has selected and retained highly competent counsel to represent the Class with significant experience in securities class action litigation. Kathrein Decl., Ex. D.

7

### 3. IWDC Has The Largest Financial Interest Of The Plaintiffs Who Have Submitted Applications For Lead Plaintiff

As a result of IWDC's purchases of Genzyme securities throughout the Class Period, it has suffered losses of $462,820.78. Kathrein Decl., Ex. B. IWDC believes it has the largest financial interest in this class action compared to any other party seeking to serve as Lead Plaintiff. The PSLRA contains a rebuttable presumption that the "most adequate plaintiff" is the plaintiff with the largest financial interest in the relief sought by the class. 15 U.S.C. § 77z-l(a)(3)(B)(iii)(I)(bb) and 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status . . ." *Ferrari v. Gisch,* 225 F.R.D. 599, 603 (C.D. Cal. 2004) (*citing In re Cavanaugh* 306 F.3d 726, 732 (9th Cir. 2002)). IWDC, therefore, is presumptively the "most adequate plaintiff" pursuant to the PSLRA.

### 4. IWDC Satisfies the Requirements of Rule 23

Section 27(a)(3)(B)(iii)(I)(cc) of the Securities Act and Section 21D(a)(3)(B)(iii)(I)(cc) of the Securities Exchange Act of 1934, as amended by the PSLRA, provides that the Lead Plaintiff must satisfy the typicality and adequacy requirements of Rule 23(a). *In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39, 46 (D. Mass. 2001) (only the typicality and adequacy factors "need to be satisfied for purposes of this inquiry"). This Court's analysis of any other requirements of Rule 23 as it relates to class certification should be deferred until such time as the Lead Plaintiff moves for class certification. *Schriver v. Impac. Mortg. Holdings, Inc.,* No. SACV 06-31 CJC (RNBx), 2006 Dist. LEXIS 40607, *15-*16 (C.D. Cal. May 2, 2006) ("At the lead plaintiff appointment stage, the Rule 23 inquiry is not as searching as it would be on a motion for class certification; the prospective lead plaintiff need only make a prima facie showing that it meets the typicality and adequacy factors."). As detailed below, IWDC satisfies both the typicality and adequacy requirements of Rule 23(a), and should be appointed Lead Plaintiff in this action.

8

### a. IWDC's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." The typicality requirement is satisfied when the representative plaintiffs' "claims arise from the 'same event or course of conduct' and involved the same legal theory as do the claims of the rest of the class." *See In re Lernout & Hauspie*, 138 F. Supp. 2d at 46 (*quoting In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1532 (D. Mass. 1991)). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Id.* (*citing Guckenberger v. Boston University,* 957 F. Supp. 306, 325 (D. Mass. 1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988).

The typicality requirement is met in this case because IWDC's claims *are identical* to the claims of the Class members. Simply put, IWDC, like all the other class members, (1) purchased Genzyme securities between June 26, 2008 and July 21, 2009; (2) paid artificially inflated prices for Genzyme securities as a result of the Defendants' misrepresentations and omissions; and (3) suffered damages thereby. Thus, IWDC's claims and injuries "arise from the same event or course of conduct" that gave rise to the claims of other class members. *In re Lernout & Hauspie*, at 46. Moreover, IWDC is not subject to any unique or special defenses. Thus, IWDC's claims are the same as the claims of the other Class members and IWDC meets the typicality requirement of Rule 23.

### b. IWDC Will Adequately Represent the Interests of the Class

Rule 23(a)'s requirement of adequate representation is satisfied if: (1) Class counsel is qualified, experienced, and generally able to conduct the litigation; (2) the interests of the Class are not antagonistic to one another; and (3) the lead plaintiff has a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Miller v. Ventro Corp.*, No. 01-01287 SBA, 2001 U.S. Dist. LEXIS 26027, *44 (N.D Cal. Nov. 28, 2001) (*citing Takeda v. Turbodyne Techs.*, 67 F. Supp. 2d 1129, 1132 (C.D. Cal. 1999)); *In re Lernout & Hauspie*, 138 F. Supp. 2d at 46 (*citing Adair v. Sorenson*, 134 F.3d 13, 18 (D. Mass. 1991)). As described below, IWDC will adequately represent the interests of the class.

IWDC's interests are clearly aligned with the members of the Class because its claims are identical to the claims of the Class. There is no evidence of antagonism between IWDC's interests and those of proposed Class members. Furthermore, IWDC has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss it incurred as a result of the wrongful conduct alleged here. This motivation, combined with the IWDC's identical interest with the members of the Class, clearly shows that IWDC will adequately and vigorously pursue the interests of the Class. In addition, IWDC has selected counsel who are highly experienced in prosecuting complex securities class actions such as this one to represent the Class. Because of IWDC's shares common interests with the Class members, has a clear motivation and ability to vigorously pursue this action, and has chosen competent counsel, it plainly meets the adequacy requirement of Rule 23(a).

Since IWDC not only meets both the typicality and adequacy requirements of Rule 23(a), and has sustained the largest known financial losses as a result of Defendants' conduct, in accordance with 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), IWDC is presumptively the most adequate Plaintiff to lead this action.[6]

**C.    This Court Should Approve IWDC's Choice of Co-Lead Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. 15 U.S.C. § 77z-1(a)(3)(B)(v); 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." *See* 15 U.S.C. § 77z-l(a)(3)(B)(iii)(II)(aa); 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(II)(aa). IWDC has selected Hagens Berman and SMBB to serve as Lead Counsel for the Class. Hagens Berman has successfully prosecuted both securities cases and complex securities fraud actions. Kathrein Decl., Ex. D (Hagens Berman resume). SMBB is also a highly experienced class action firm whose attorneys have been involved in numerous securities actions. *See* Kathrein Decl., Ex. E (SMBB resume) This Court may be assured that in

---

[6] The PSLRA clearly envisions a two-part test of a presumption of adequacy and a mechanism for rebutting the presumption. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) and (II) and § 78u-1(a)(3)(B)(iii)(I) and (II). IWDC meets the presumption of adequacy.

10

the event that this Motion is granted, the Class Members will receive the highest caliber of legal representation.

## V. CONCLUSION

For all of the foregoing reasons, IWDC respectfully requests that this Court: (1) consolidate the above-captioned cases; (2) appoint IWDC to serve as Lead Plaintiff in this action; (3) approve IWDC's selection of Co-Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: September 28, 2009                    HAGENS BERMAN SOBOL SHAPIRO, LLP

By: ___/s/ David S. Nalven_____
         David S. Nalven

HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Pkwy, Suite 301
Boston, MA 02142
Telephone: (617) 475-1953
Facsimile: (617) 482-3003
davidn@hbsslaw.com

Reed R. Kathrein
Peter E. Borkon
HAGENS BERMAN SOBOL SHAPIRO, LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

Steve Berman
HAGENS BERMAN SOBOL SHAPIRO, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

David J. Cohen
SALZ, MONGELUZZI BARRETT &
BENDESKY, P.C.
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: (215) 575-3985
Facsimile: (215) 575-3894

dcohen@smbb.com

*Attorneys for Proposed Lead Plaintiff Iron Workers' District Council (Philadelphia & Vicinity) Pension & Benefit Plans and Proposed Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.


                                                      DAVID S. NALVEN