# EXHIBIT A



Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. Michigan,
Southern Division.
Jonathan WILKOF, et al., Plaintiffs,
v.
CARACO PHARMACEUTICAL LABORATORIES, LTD., et al., Defendants.

No. 09–12830.
Oct. 21, 2010.

Courtney B. Ciullo, E. Powell Miller, Marc L. Newman, The Miller Law Firm, S. Thomas Wienner, Weinner, Gould, Rochester, MI, Peter A. Binkow, Ex Kano S. Sams, Glancy Binkow & Goldberg LLP, Los Angeles, CA, for Plaintiffs.

Frank A. Taylor, Margaret A. Goetze, Briggs and Morgon, P.A., Minneapolis, MN, for Defendants.

***OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS [28] AS TO COUNT I AGAINST ONLY DEFENDANT SUN PHARMA AND DENYING IN PART THE REMAINDER OF DEFENDANTS' MOTION***
ARTHUR J. TARNOW, Senior District Judge.

**\*1** Before the Court is Defendants's Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws [28], filed on April 12, 2010. Plaintiffs filed their response [32] on May 27, 2010. Defendants filed a reply [37] on June 24, 2010.

On August 26, 2010, the Court heard oral arguments on the Motion.

For the reasons that follow, Defendants' Motion is GRANTED IN PART as to the dismissal of Count I against only Defendant Sun Pharma. Plaintiffs' claims against Sun Pharma brought under Count II may proceed. Defendants' Motion is DENIED IN PART as to the remainder of the Motion.

**I. Background**
Plaintiffs filed this federal class action suit on July 17, 2009 on behalf of purchasers of Defendant Caraco's securities between May 29, 2008 and June 25, 2009, alleging violations of federal securities laws. On February 11, 2010, Plaintiffs filed an Amended Complaint [23]. According to the Amended Complaint, Defendant Movens served as CEO of Caraco and Defendant Shanghvi was the chairman of Caraco's Board of Directors. *See* Amended Complaint at ¶ 27–29 (both of these Defendants are referred to collectively throughout the Amended Complaint as the "Individual Defendants"). Defendant Sun Pharma, one of India's leading pharmaceutical companies, was the majority and controlling shareholder of Caraco. *Id* at ¶ 30.

Although the Court will not repeat all of the allegations set forth in Plaintiffs' 137 page Amended Complaint, the Amended Complaint alleges, in summary, that Caraco was informed by the Food and Drug Administration ("FDA") after various inspections between 2005 and 2008 about defective and deficient conditions in Caraco's manufacturing facilities. *See* Amended Complaint at ¶ 6. If the company's facilities were not in compliance with the FDA's current Good Manufacturing Practices ("cGMP"), the FDA could delay approval of a drug application and could also determine, if serious problems continued, that the drugs were " 'adulterated'... and cease all production and distribution." *Id.* at ¶ 5. According to various confidential witnesses who were employed by Caraco, the conditions in the company's Detroit facility were very poor and included contamination and production of pills that were not the proper size. *Id.* at ¶ 7. Despite knowledge of the company's problems, Defendant Caraco "minimized both their scope and overall significance" to the public. *Id.* at ¶ 6, 8.

In October 2008, the FDA issued a warning letter to Caraco indicating "that its May 1, 2008 to June 11, 2008 inspection of Caraco's manufacturing facilities revealed " 'significant deviations from ...' " cGMP

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)**
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

regulations and that a failure to correct the various violations noted could result in legal action. *Id.* at ¶ 70–73. Some of the observations included in the warning letter included the "failure of the Quality Control Unit ... to review and approve all drug product production" to ensure compliance with approved procedures before a batch was distributed and a "failure to maintain equipment at appropriate intervals to prevent malfunctions or contamination that would alter the safety" and "purity" of the drugs. *Id.* at ¶ 71. After news of the warning letter was released, shares of Caraco dropped by about 22% over three days, closing on November 5, 2008 at $7.91 per share. *Id.* at ¶ 10. Caraco continued to represent to investors that the company had taken corrective action. *Id.* at ¶ 74.

**\*2** On March 31, 2009, Caraco "disclosed that it had commenced a voluntary recall, with the knowledge of the FDA, of certain tablets manufactured by the Company because the tablets might have differed in size and therefore could have more or less of the active ingredient." *Id.* at ¶ 14. This disclosure sent share prices down that day more than 22%, with stocks closing at $3.52 per share. *Id.* at ¶ 125. Although this recall indicated various problems at Caraco, the complete extent of the company's problems were not shared with the public. *Id.* at ¶ 15.

On June 15, 2009, the company stated in an SEC filing that it believed it was "substantially cGMP compliant" but on June 24, 2009, the Government filed a complaint for forfeiture of adulterated articles of drugs located in Caraco's facilities in Farmington Hills and Wixom, Michigan. *Id.* at ¶ 131–133. The complaint alleged that the FDA had found "continuing and significant violation of cGMP," even though Caraco had represented that it had taken action to cure such violations. *Id.* at ¶ 133; *see also United States v. Adulterated Articles of Drug,* Case No. 09–12498 (E.D.Mich.2009) (Tarnow.J.).

Ultimately, "on June 25, 2009, investors learned the true extent of Caraco's severe and systemic manufacturing problems. That day, the FDA announced that U.S. Marshals had seized drug products manufactured by Caraco from the Company's facilities" as a result of "Caraco's continued failure to meet the FDA's cGMP requirements ..." *Id.* at ¶ 17. The FDA indicated that the aim of the seizure was to prevent the company from continuing to distribute drugs until there was "assurance that the firm complies with good manufacturing requirements. On this news, shares of Caraco ..." dropped approximately 43%, closing that day at $2.39 per share. *Id.* at ¶ 17–18.

Plaintiffs' complaint sets forth two claims: 1) Violation of Section 10(b) [FN1] of Exchange Act and Rule 10b–5 [FN2] promulgated thereunder against all Defendants. Plaintiffs allege that Defendants, inter alia, carried out a plan intended to deceive the public, caused Plaintiffs to purchase Caraco securities at artificially inflated prices, and knowingly and/or recklessly made false statements [FN3] and omitted material facts in order to mislead the public about Caraco's operations 2) Violation of Section 20(a) [FN4] of the Exchange Act against Defendant Sun Pharma and the Individual Defendants Movens and Shanghvi. Plaintiffs allege these Defendants had direct and supervisory involvement in Caraco's operations. Plaintiffs state that by virtue of Sun Pharma's and the Individual Defendants' positions as "controlling persons," they are liable pursuant to Section 20(a).

> FN1. Section 10(b), set forth in 15 U.S.C. § 78j(b), makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

> FN2. This rule, set forth in 17 C.F.R. 240.10b–5, states, "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

> FN3. The statements Plaintiffs allege are

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

> false and misleading are identified at ¶ 100, 102, 104, 106, 108, 110, 112, 114, 118, 120, 122, 129, and 131 of the Amended Complaint. Following the statements are explanations of how it they were false and/or misleading.

> FN4. Section 20(a), 15 U.S.C. § 78t(a), states, "Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

## II. Standard of Review

The parties do not dispute the applicable standard of review. In order to withstand a motion to dismiss, the:

> complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.

**\*3** *See* Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation and internal quotation marks omitted).FN5

> FN5. The Supreme Court's rulings in *Ashcroft* and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) have generated a great amount of academic commentary. One commentator has lamented the departure of those decisions from the "notice-pleading" approach set forth in Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), stating that "[t]he Court's establishment of plausibility pleading, with its emphasis on the need for factual allegations, has a direct impact on the accessibility of the federal courts to the citizenry in all categories of cases. To a degree not yet determined, it will chill a potential plaintiff's or lawyer's willingness to institute an action. And even if one is started, it will result in some possibly meritorious cases being terminated under Rule 12(b)(6), thereby reducing citizens' ability to employ the nation's courts in a meaningful fashion." *See* Arthur Miller, *From* Conley *to* Twombly *to* Iqbal*: A Double Play on the Federal Rules of Civil Procedure,* 60 DUKE L.J. 1, 71 (2010).

Securities cases have additional pleading requirements. In order to state a claim for securities fraud under Section 10(b) of the Exchange Act and Rule 10b–5, Plaintiffs must allege: "(1) a material misrepresentation or omission; (2) *scienter*; (3) a connection with the purchase or sale of a security; (4) reliance (or transaction causation); (5) economic loss; and (6) loss causation." *See* Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 917 (6th Cir.2007). Moreover, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), there are further pleading requirements. Plaintiffs must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading" *See* 15 U.S.C. § 78u–4(b)(1). Plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *See* 15 U.S.C. § 78u–4(b)(2). Finally, claims alleging fraud must also satisfy the pleading requirements of Fed.R.Civ.P. 9(b) that require that fraud be plead with particularity.

## III. Analysis

### A. Defendants argue that Plaintiffs have failed to state a claim for securities fraud

Of the six factors cited above that Plaintiffs must allege in order to state a claim for securities fraud under Section 10(b) of the Exchange Act and Rule 10b–5, Defendants argue that Plaintiffs have failed to allege two: misrepresentations or omissions of material fact and scienter.

### 1. Misrepresentations or omissions of material fact

Defendants argue that Plaintiffs have failed to sufficiently plead that Defendants made misrepresentations or omissions of material fact.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

A misrepresentation or omission is "material" if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." See *Basic, Inc. v. Levinson,* 485 U.S. 224, 231–232, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (citation and internal quotation marks omitted).

The Sixth Circuit has concluded that:

> the general rule for securities fraud cases is that at [the motion to dismiss] stage in the proceedings, a complaint may not properly be dismissed on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their unimportance. Courts generally reserve such questions for the trier of fact.

See *City of Monroe Employees Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 681 (6th Cir.2005) (citation and internal quotation marks omitted). Applying that rule here, the Court finds that the misstatements and omissions alleged in the Amended Complaint do not meet the standard for dismissal. The statements Plaintiffs identify in their Amended Complaint would not have been so obviously unimportant to a reasonable investor. Dismissal at this stage is unwarranted.

**\*4** This Court also rejects Defendants' contention that this matter must be dismissed because the statements at issue were merely opinions that a reasonable investor could consider and discount. As Plaintiffs correctly note, "opinions may be deemed false or misleading under the securities law ..." See *City of Monroe,* 399 F.3d at 670. The Sixth Circuit in *City of Monroe* explains this, stating:

> [A] company is generally under no obligation to disclose its expectations for the future to the investing public. If a company chooses to volunteer such information, though, its disclosure must be full and fair, and courts may conclude that the company was obliged to disclose additional material facts ... to the extent that the volunteered disclosure was misleading.... Our securities laws therefore require an actor to provide complete and non-misleading information with respect to the subjects on which he undertakes to speak.

*Id.* at 670 (citations and internal quotation marks omitted). Thus, although it is obvious that Caraco, as Defendants allege, is unable to "predict the future," Plaintiffs are right that once Defendants did make statements, they were obligated to share complete information. This is exactly what Plaintiffs plead that Defendants failed to do. Moreover, the Court in *City of Monroe* notes:

> Federal courts have drawn the line on whether a statement may be actionable based, not on whether in the abstract a statement was best characterized as fact or opinion but, rather, if it was an opinion, on the nature of the statement. The key is whether the proposition at issue can be proven or disproven using standard tools of evidence. Thus, ... vague statements not subject to verification by proof are generally deemed non-actionable puffery. But opinion or puffery ... in particular contexts when it is both *factual and material* ... *may* be actionable.

*Id.* at 674 (citation and internal quotation marks omitted).

Here, whether Caraco was compliant with cGMP regulations is an issue subject to objective verification. Additionally, whether the statements identified in the Amended Copmlaint that Defendants took corrective action to address the company's problems and that Caraco was complying with the law constituted "puffery" or more is a factual question that this Court will not resolve on a Rule 12(b)(6) motion. See *In re Proquest,* 527 F.Supp.2d 728, 744 (E.D.Mich.2007) (Defendant argued in motion to dismiss that his statement constituted "corporate puffery"; Court finds that Defendant was "challenging the substance of the statements, not whether plaintiffs have actually plead that he made false statements" and concludes that "[t]he complaint is not subject to dismissal on these grounds").

This Court further declines to dismiss this matter based on Defendants' argument that documents such as the FDA Form 483s were public and could be accessed by shareholders. As Plaintiffs correctly note, such a "truth on the market defense" (where a "misrepresentation is immaterial if the information is already known to the market because the misrepresentation cannot then defraud the market") "is intensely

Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

fact-specific and is rarely an appropriate basis for dismissing a § 10(b) complaint for failure to plead materiality." See Ganino v. Citizens Utils. Co., 228 F.3d 154, 167 (2d Cir.2000).

**2. Scienter**

*5 Defendants argue that Plaintiffs have also failed to allege scienter, another factor that is required for stating a securities claim under Section 10(b) of the Exchange Act and Rule 10b–5.

In considering the element of "scienter," meaning a "mental state embracing intent to deceive, manipulate, or defraud," on a motion to dismiss, this Court must examine "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." See Tellabs, Inc. v. Makor Issues of Rights, Ltd., 551 U.S. 308, 319, 322–323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007). A party "may be liable for recklessness, that is, highly unreasonable conduct which is an extreme departure from the standards of ordinary care." See Helwig v. Vencor, Inc., 251 F.3d 540, 550 (6th Cir.2001) (citation and internal quotation marks omitted). Moreover, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." See Tellabs, 551 U.S. at 324. A complaint will survive a motion to dismiss if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

The Court agrees with the parties that the factors identified by the Sixth Circuit in *Helwig,* supra, are relevant in the Court's determination as to whether Plaintiffs have adequately plead scienter.[FN6] However, the list is "not exhaustive." *Id* at 552.

> FN6. In *Helwig,* the Court listed nine factors that are usually relevant to scienter. The Court noted that the list is not exhaustive but rather is helpful in guiding securities fraud pleading. *See Helwig* at 552. The nine factors are: "(1) insider trading at a suspicious time or in an unusual amount; (2) divergence between internal reports and external statements or omission and the later disclosure of inconsistent information; (3) closeness in time of an allegedly fraudulent statement or omission and the later disclosure of inconsistent information; (4) evidence of bribery by a top company official; (5) existence of an ancillary lawsuit charging fraud by a company and the company's quick settlement of that suit; (6) disregard of the most current factual information before making statements; (7) disclosure of accounting information in such a way that its negative implications could only be understood by someone with a high degree of sophistication; (8) the personal interest of certain directors in not informing disinterested directors of an impending sale of stock; (9) the self-interested motivation of defendants in the form of saving their salaries or jobs." *Id.* at 552.

The Court finds that Plaintiffs have sufficiently plead facts "supporting a strong inference" concerning the requisite scienter. Plaintiffs allege throughout the Amended Complaint that Defendants made false and/or misleading statements knowingly or recklessly. For example, the May 12, 2009 FDA Form 483 details, as plead in the Amended Complaint, how Defendants were on notice of the serious manufacturing problems at Caraco. *See* Amended Complaint at ¶ 169. Form 483 documents "numerous instances of Adverse Drug Event and/or complaints from consumers or health care professionals ..., which were forwarded to Caraco, regarding tablet size variation and not thoroughly investigated." *Id.* Plaintiffs allege that Defendants did not advise investors of the problems at Caraco and that even when Defendants speak up, they did not share full information with the public regarding the true extent of these problems.

Under the law, no one factor is dispositive of establishing scienter. Here, of particular significance is the "temporal proximity" factor. For example, the Amended Complaint alleges that on June 10, 2008, Caraco filed its Form 10–K with the SEC. *See* Amended Complaint at ¶ 102. The form, signed by Defendant Movens, acknowledged, inter alia, that the FDA had concluded an inspection in February 2008 and that Caraco "has responded accordingly and we believe we remain substantially compliant ... We continue to focus on improving the amount of support in both quality assurance and quality control." *Id.* However, the next day, June 11, 2008, "the FDA issued a Form 483 to Caraco, addressed to

[D]efendant Movens, listing fourteen observations regarding Caraco's manufacturing practices," with the overall theme being the "company's inability to produce quality pills, *i.e.,* drug products that have the identity, strength, quality, and purity they purport or are represented to possess." *Id.* at ¶ 60. The Form indicated that equipment was not properly cleaned and maintained and that "[e]mployees engaged in the manufacture and processing of a drug product lack the training required to perform their assigned functions." *Id.* at ¶ 60(h), (j). The Form also stated that "[t]here are no written procedures for production and process control ..." *Id.* at ¶ 60(c).

**\*6** Subsequently, on October 24, 2008, Caraco filed its 10–Q form with the SEC, claiming that it believed it "remain[ed] substantially compliant" with FDA requirements; only a week later, on October 31, 2008, the FDA issued a warning letter to Caraco stating that the inspection it conducted revealed "significant deviations from cGMP regulations." *See* Amended Complaint at ¶ 161(b).

Caraco also stated in its June 15, 2009 SEC filing (Form 10–K) that it believed it was "substantially cGMP compliant" but less than two weeks later, federal agents were raiding Caraco facilities based on the Government's view that there was major non-compliance in the facility. *See* Amended Complaint at ¶ 133, 134, 161(e).

Furthermore, contrary to Defendants' assertions, the Sarbanes–Oxley (SOX) certifications in SEC filings add to the strong scienter inference. *See In re Proquest,* 527 F.Supp.2d at 742–743. As alleged in the Amended Complaint, Defendant Movens signed the SEC filings indicating that the information in the report fairly presents the financial conditions and results of operations of Caraco, despite knowing or recklessly not knowing such information to be false or misleading.

The detailed allegations in the Amended Complaint made by the confidential informants also contribute to the strong inference of scienter. Their assertions demonstrate, *inter alia,* the divergence between internal reporting of problems and external public statements made. Defendants are incorrect in stating that Plaintiffs "solely" rely on the allegations of confidential witnesses to meet pleading requirements. The allegations of the witnesses are only part of the 137 page complaint and part of the allegations regarding scienter.

Additionally, "the absence of proper names does not invalidate the drawing of a strong inference from informants' assertions." *See Makor Issues & Rights, Ltd. v. Tellabs Inc.,* 513 F.3d 702, 712 (7th Cir.2008) Although "allegations from a confidential source likely cannot be the *sole* basis for establishing scienter ... [,] that does not mean they lack all relevance." *See In re Proquest,* 527 F.Supp.2d at 739–740. Instead, "to the extent the allegations from a confidential source are consistent with other allegations, they can further support an inference of scienter." *Id.* at 740.

Plaintiffs identify in their Amended Complaint the positions and duties of the ten witnesses and the time frame they worked for Caraco. *See* Amended Complaint at ¶ 89–98. The witnesses describe in great detail the severity of the manufacturing problems at Caraco. Plaintiffs do not rely solely on the allegations of these confidential witnesses in their Amended Complaint to plead their case of securities fraud. The witnesses' allegations corroborate Plaintiffs' claims that Defendants, despite being aware of Caraco's vast problems, made public comments that did not provide a full and accurate picture of the situation. The witnesses' claims of rampant manufacturing problems are consistent with the FDA's findings, including those detailed on Form 483 issued on June 11, 2008, which as discussed above, note Caraco's serious manufacturing problems, and the October 31, 2008 FDA warning letter, which indicated that the inspection conducted revealed "significant deviations from cGMP regulations."

**\*7** Defendants further maintain that the use of outside consultants negates any inference that they acted with fraudulent intent but as Plaintiffs rightly note, various courts have rejected such an argument. *See In re Nextcard, Inc. Sec. Litig.,* 2006 WL 708663 at \*5 (N.D.Cal.2006); *see also In re Able Lab. Sec. Litig.,* 2008 WL 1967509 at \*8, 30 (D.N.J.2008). Additionally, although Defendants assert that Plaintiffs fail to plead a particular motive for Defendants to commit the alleged fraud, Plaintiffs are not required to do so. *See Tellabs,* 551 U.S. at 325. This is also not a situation where a group of plaintiffs have plead only motive but nothing else to satisfy the scienter requirement.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

Plaintiffs have satisfied the standard that their complaint will survive a motion to dismiss if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." The Court concludes, after taking into account *all* of the facts alleged, as it is required to do, that Plaintiffs have sufficiently plead facts giving rise to a strong inference of scienter.

**B. Defendants allege that the amended complaint improperly group pleads its scienter allegations against the individual Defendants and that Plaintiffs have failed to assert a claim against Defendant Shanghvi**

Defendants assert that Plaintiffs fail to attribute the alleged misstatements or omissions to particular Defendants and instead group pleads their scienter allegations regarding the individual Defendants (Movens and Shanghvi).

The Sixth Circuit has not determined whether the group pleading doctrine has survived the PSLRA. However, even assuming *arguendo* that the doctrine, as Defendants maintain, is not viable, Plaintiffs have sufficiently plead scienter as to the Individual Defendants. For instance, Plaintiffs allege that Defendant Movens knowingly or recklessly made false and/or misleading statements regarding Caraco. *See* Amended Complaint at ¶ 100–101, 104–105, 120–121, 129–130. As discussed above, the Amended Complaint also alleges that Movens signed various SEC filings that contained statements he knew or was reckless in not knowing were false and/or misleading. *Id.* at ¶ 102–103, 106–107, 112–113, 122–123, 131–134. This Court further detailed above the closeness in time between the allegedly fraudulent statements and the later disclosure of inconsistent information. *Id.* at ¶ 102–103, 112–113, 131–134. Additionally, as plead in the Amended Complaint, multiple confidential witnesses assert that Movens had knowledge of Caraco's problems.

Plaintiffs have sufficiently asserted a fraud claim and plead scienter as to Defendant Shanghvi. Plaintiffs allege that Defendant Shanghvi knowingly or recklessly made false and/or misleading statements. *See* Amended Complaint at ¶ 108–109. These were made only several weeks before the FDA issued its October 2008 warning letter.

**\*8** Thus, this Court rejects Defendants' argument that the Amended Complaint should be dismissed as to Defendants Moven and Shanghvi.

**C. Defendants allege that the amended complaint fails to assert a claim for securities fraud against Defendant Sun Pharma**

Defendants maintain that Plaintiffs do not allege that Sun Pharma, the parent company, made any false or misleading statements or that Sun Pharma had any role in the creation of the misleading statements. Defendants argue that the Court should not presume recklessness or intentional misconduct of a parent company for fraudulent statements made by its subsidiary.

Plaintiffs have not adequately countered Defendants' arguments, only briefly addressing Sun Pharma's liability in a footnote in their response.

Accordingly, this Court finds that Plaintiffs have not sufficiently plead under Count I a claim against Sun Pharma. Defendants' Motion, as to the dismissal of Count I only against Sun Pharma, is GRANTED. However, as will be discussed below, Plaintiffs have adequately plead a claim under Count II against Sun Pharma.

**D. Defendants allege that Plaintiffs fail to specify each allegedly misleading statements and why each statement is misleading**

Defendants assert that Plaintiffs fail to indicate each misleading statement alleged and the reason why it is misleading.

Defendants' argument is rejected. Full statements Plaintiffs allege are false and misleading are identified at ¶ 100, 102, 104, 106, 108, 110, 112, 114, 118, 120, 122, 129, and 131 of the Amended Complaint. Following the statements are explanations of how the statements were materially false and/or misleading. Moreover, as discussed above, whether Defendants' optimistic statements constituted "puffery" or more is an issue inappropriately addressed on a motion to dismiss.

**i. Safe harbor provision**

Defendants also argue that their forward-looking statements are entitled to protection under the PSLRA's "safe harbor" provision. The provision protects statements "accompanied by meaningful cau-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

tionary statements." See 15 U.S.C. § 78u–5(c)(1). Defendants identify three examples of allegedly meaningful cautionary language contained within their filings. *See* Defendants' Motion at 41.

Plaintiffs argue in response that Defendants' statements are not forwardlooking but rather are statements of "historical or present fact" and thus the safe harbor provision does not apply. Defendants' disclaimers did not constitute meaningful cautionary language, Additionally, "[c]autionary language can never be 'meaningful' if it warns of risks that have already materialized," which is the situation here where Defendants were allegedly aware of the manufacturing problems at the company. See *In re 21st Century Holding Co. Sec. Litig.,* 2008 WL 5749572 at *13. Finally, Defendants also allegedly had actual knowledge of the falsity of their statements, making the safe harbor provision inapplicable under the language of the provision.

**\*9** This Court finds that it is unnecessary to address each point in opposition Plaintiffs raise, as the Court agrees with Plaintiffs' argument that the three examples of language used to warn investors identified in Defendants' motion do not constitute meaningful cautionary language. *See Helwig,* 251 F.3d at 558–559 (citation and internal quotation marks omitted) ("The cautionary statements must convey substantive information about factors that realistically could cause results to differ materially from those projected in the forward-looking statements, such as, for example, information about the issuer's business"); *see also Yanek v. Staar Surgical Co.,* 388 F.Supp.2d 1110, 1123 (C.D.Cal.2005). Moreover, Plaintiffs have adequately plead that Defendants had actual knowledge of the problems at Caraco and none of the warnings suggested that based on Defendants' knowledge, the statements could be inaccurate. *See In re FirstEnergy Corp. Sec. Litig.,* 316 F.Supp.2d 581, 596 (N.D.Ohio 2004).

**E. Defendants allege that the amended complaint fails to state a claim for control person liability**
In addition to their claims brought under Section 10(b) and Rule 10b–5, Plaintiffs also bring a claim under Section 20(a) of the Exchange Act against Sun Phama and Defendants Movens and Shanghvi for "control person" liability. [FN7]

FN7. Although Defendants argue that Plaintiffs are precluded from asserting both Section 10(b) and 20(a) claims against the same Defendants, the Sixth Circuit case Defendants cite in support of their argument, *PR Diamonds, Inc. v. Chandler,* 364 F.3d 671 (6th Cir.2004), does not reach that conclusion. *Id.* at 697 (Court states, "*Without deciding the question,* we note that some authority suggests that a plaintiff may not be able to assert both a *Section 10(b)* and *Rule 10–5* claims and *Section 20(a)* claims against the same defendant") (emphasis added).

Section 20(a) creates a cause of action for "control person" liability, stating:

Every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Thus, in order to establish liability under Section 20(a):
the 'controlled person' must have committed an underlying violation of the securities laws or the rules and regulations promulgated thereunder. Second, the 'controlling person' defendant in a Section 20(a) claim must have directly or indirectly controlled the person liable for the securities law violation. 'Control' is defined as 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'

See *PR Diamonds,* 364 F.3d at 696–697.

Plaintiffs allege in the complaint that Defendant Sun Pharma and Defendants Movens and Shanghvi are controlling persons of Caraco (the controlled) and by virtue of their positions and ownership rights, they had the power to influence and control company decision making, including statements disseminated. *See* Amended Complaint at ¶ 187–190.

Defendants assert that the Section 20(a) claim

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)
**(Cite as: 2010 WL 4184465 (E.D.Mich.))**

must be dismissed for several reasons. First, Defendants allege that Plaintiffs have failed to allege an underlying securities violation. However, as this Court concluded above, Plaintiffs have sufficiently plead an underlying securities violation against Caraco.

***10** Defendants next argue that Plaintiffs summarily conclude that the individual Defendants are control persons simply based on their positions with Caraco. However, Plaintiffs plead more than that; their complaint alleges that these Defendants:

> had the power to influence and control and did influence and control ... the decision making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.... [They] were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected....
>
> [They] had direct and supervisory involvement in the day-to-day operations of the Company ....

   *See* Amended Complaint at ¶ 188–189.

   Finally, although Defendants assert that Plaintiffs have failed to allege specific facts demonstrating that Sun Pharma and each of the individual Defendants were "culpable participants" in the alleged underlying violation, this Circuit does not require that "culpable participation" be plead in order to set forth a Section 20(a) violation. See *In re Proquest,* 527 F.Supp.2d at 746 (citing *PR Diamonds,* 364 F.3d at 696).

**IV. Conclusion**
   Based on the above findings, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws [28] is **GRANTED IN PART** as to the dismissal of Count I against only Defendant Sun Pharma.

   **IT IS FURTHER ORDERED** that Defendants' Motion is DENIED IN PART as to the remainder of the Motion.

   **SO ORDERED.**

E.D.Mich.,2010.
Wilkof v. Caraco Pharmaceutical Laboratories, Ltd.
Not Reported in F.Supp.2d, 2010 WL 4184465 (E.D.Mich.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.