# EXHIBIT C



**David Shapiro, individually and on behalf of all others similarly situated, Plaintiffs, vs. Matrixx Initiatives, Inc., William J. Hemelt, Samuel C. Cowley, Timothy L. Clarot and Carl L. Johnson, Defendants.**

No. CV-09-1479-PHX-ROS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

*2011 U.S. Dist. LEXIS 111159*

**September 26, 2011, Decided
September 26, 2011, Filed**

**COUNSEL:** [*1] For David Shapiro, Individually and On Behalf Of All Others Similarly Situated, Plaintiff: Christopher S Jones, Joseph E White, III, Lester R Hooker, Maya Saxena, Saxena White, Boca Raton, FL; Jeremy James Christian, Tiffany & Bosco PA, Camelback Esplanade II, Phoenix, AZ; Nadeem Faruqi, Faruqi & Faruqi LLP, New York, NY; Richard Glenn Himelrick, Tiffany & Bosco PA, Phoenix, AZ; Vahn Alexander, Faruqi & Faruqi LLP, Los Angeles, CA.

For Axel Alegre de La Soujeole, Lead Plaintiff, Plaintiff: Christopher S Jones, Joseph E White, III, Maya Saxena, Saxena White, Boca Raton, FL; Jeremy James Christian, Tiffany & Bosco PA, Camelback Esplanade II, Phoenix, AZ; Nadeem Faruqi, Faruqi & Faruqi LLP, New York, NY; Richard Glenn Himelrick, Tiffany & Bosco PA, Phoenix, AZ; Vahn Alexander, Faruqi & Faruqi LLP, Los Angeles, CA.

For Matrixx Initiatives Incorporated, Carl J Johnson, Timothy L Clarot, Samuel C Cowley, William J Hemelt, Defendants: Amy J Longo, Michael G Yoder, Molly J Magnuson, OMelveny & Myers, Newport Beach, CA; David B Rosenbaum, Maureen Beyers, Osborn Maledon PA, Phoenix, AZ.

**JUDGES:** Roslyn O. Silver, Chief United States District Judge.

**OPINION BY:** Roslyn O. Silver

**OPINION**

**ORDER**

Pending before the Court is Defendants' [*2] motion to dismiss. (Doc. 31). For the reasons below, the motion to dismiss will be denied.

**BACKGROUND**

This is a securities class action against Matrixx Initiatives, Inc. ("Matrixx") and four individual defendants. The class period runs from December 22, 2007 to June 15, 2009. (Doc. 30, at 1). Matrixx sells cold medicines, including Zicam Cold Remedy Nasal Spray and Cold Remedy Swab (collectively, "Zicam"). (Doc. 30, ¶¶ 2-3). Due to the nature of its active ingredient, zinc gluconate, Matrixx was able to sell Zicam as a homeopathic drug. (Id., ¶ 27); (Doc. 32, Ex. 39, at 2). As such, it did not need to go through the FDA's extensive new drug application process. (Doc. 32, Ex. 39, at 2).

The U.S. Securities and Exchange Commission requires publicly traded companies disclose information on an ongoing basis, such as annual reports on Form 10-K and quarterly reports on Form 10-Q.[1] Matrixx's 2005 through 2009 10-K's revealed hundreds of claimants and potential claimants alleging Zicam caused anosmia:[2] 340 claimants in 2005 10-K; 431 claimants in 2006 10-K; 250 additional potential claimants in 2007 10-K; 533 claims since 2005 and 500 additional potential claimants in 2008 10-K; 14 pending personal [*3] injury lawsuits involving 29 plaintiffs in 2009 10-K. (Doc. 31, at n. 11). Matrixx's 2009 Form 10-Q stated, "[P]laintiffs' attorneys collectively represent approximately 510 additional potential claimants." (Doc. 32, Ex. 32, at 10).

1   <www.sec.gov/answers/form10k.htm> last visited September 19, 2011.
2   Anosmia is the loss of smell. (Doc. 30, ¶ 4).

Matrixx's 2009 10-K reported legal expenses ranging from $2.2 million to $6 million from 2006 to 2009, and stated, "[t]he Company's legal expense for these lawsuits continues to have a significant impact on the results of operations . . . ." (Doc. 30, ¶ 38). The 2009 10-K also stated, "Since 2005, many lawsuits have been filed against us alleging that our Zicam Cold Remedy nasal gel product has caused the permanent loss or diminishment of the sense of smell or smell and taste. **We believe such claims are scientifically unfounded and misleading.**" (Doc. 30, ¶ 46) (emphasis added).

Matrixx's risk disclosures state, "[a]lthough we believe our products and claims comply in all material respects with the regulatory requirements, if the FDA or FTC were to determine that we are in violation of any such requirement, either agency could restrict our ability [*4] to market the products . . . or cause us to remove the products form the market." (Doc. 30, at ¶¶ 29, 69); *see also* (Doc. 32, Ex. 16 at 11, Ex. 22 at 10, Ex. 27 at 13) ("If the FDA came to believe that any of our products do not comply with the regulations or caused harm to consumers, we could be required to stop selling that product or subject the product to a recall."). Matrixx's Form 8-K announced a limited recall for Zicam products but stated there were "**no reports of injury or illness** involving the affected products." (Doc. 30, ¶ 71) (emphasis added). As explained below, Plaintiffs allege Defendants simultaneously withheld more than 800 customer complaints regarding anosmia.

Prior to 2007, the FDA did not require non-prescription drug manufacturers to submit copies of adverse event reports ("AERs"). (*See* Doc. 30, ¶ 30-33). The Dietary Supplement and Non-Prescription Drug Consumer Protection Act (the "Act"), effective December 22, 2007, required manufacturers to report certain, but not all, AERs. Specifically, the Act required manufacturers to provide copies of AERs only if they constituted *serious* adverse event ("SAE") reports. (Doc. 30, ¶ 31-33) (citing *21 U.S.C. § 379aa*). "Serious [*5] adverse event" is defined by the Act as: "an adverse event that (A) results in - (i) death; (ii) a life-threatening experience; (iii) inpatient hospitalization; **(iv) a persistent or significant disability or incapacity;** or (v) a congenital anomaly or birth defect; or (B) requires, based on reasonable medical judgment, a medical or surgical intervention to prevent an outcome described under subparagraph (A)." (Id.) (emphasis added). Plaintiffs allege the FDA Medical Officer for Compliance, Dr. Charles Lee, concluded "the loss of the sense of smell, known as anosmia, is serious." (Doc. 38, Ex. 37, at 3).

The FDA was authorized to review consumers' AERs, and reviewed Matrixx's anosmia AERs in May 2005 and May 2009. (Doc. 30, ¶ 40-45, 47-48). The May 2005 review[3] revealed numerous anosmia complaints from consumers. (Doc. 30, ¶ 40). After the May 2009 inspection, Matrixx received a Form 483 stating Matrixx had failed to submit to the FDA anosmia reports labeled "serious" by the inspector. (Doc. 30, ¶ 48). The Form 483 indicated, "[s]erious adverse event(s) for a non-prescription drug used in the United States ha[ve] not been reported to the Secretary." (Doc. 30, ¶ 48). The Form 483 reflects [*6] the "inspectional observations" and was not a "final Agency determination regarding compliance." (Doc. 32, Ex. 34). The FDA had itself received 319 AERs complaining of anosmia after using an intranasal Zicam product, 131 of which involved the use of a zinc-containing product. (Doc. 30, ¶ 49).

3   This is prior to the class period. (Doc. 30, 1).

In a June 16, 2009 warning letter (the "Warning Letter"), the FDA stated it had received more than 130 reports of anosmia associated with Zicam. (Doc. 30, ¶ 52). Due to the AERs evidencing a safety risk, Matrixx would have to comply with the Act's new drug approval requirement "regardless of [Zicam's] homeopathic status." (Doc. 30, ¶ 53). The Warning Letter stated selling Zicam without such approval would be illegal. (Doc. 30, ¶ 53). The Warning Letter also indicated Zicam labeling did not bear "adequate warnings regarding the risk of anosmia associated with the product." (Doc. 30, ¶ 54). The Warning Letter asked Matrixx to disclose "**more than 800 reports** related to loss of sense of smell associated with Zicam," which Matrixx previously failed to submit to the FDA or investors. (Doc. 30, ¶ 55) (emphasis added). The Warning Letter did not define anosmia [*7] reports as SAEs, and during a press conference that same day the FDA said it could not address that question. (Doc. 30, ¶ 52-55; Doc. 32, Ex. 37, at 10; Doc. 30, Ex. 39).

On the same day the FDA issued the Warning Letter to Matrixx, the FDA also issued a health advisory warning of the risk of loss of smell related to Zicam. (Doc. 30, ¶ 56). That day, Matrixx pulled the Zicam products from the market and Matrixx's stock price plummeted approximately 70 percent. (Doc. 30, ¶ 83-84).

In response to the Warning Letter, Matrixx acknowledged it had "regularly" received AERs regarding anosmia and Zicam, but "[t]he firm does not classify and report anosmia (loss of smell) or loss of taste as a serious adverse event and therefore does not report these complaints to the [FDA]." (Doc. 30, ¶ 57) (emphasis added). Matrixx based this position on an opinion provided by an outside law firm, K&L Gates, but did not indicate when this opinion was requested or formed.

(Doc. 30, ¶ 58). The K&L Gates opinion relies on an undated memorandum written by a clinician and addressed to Defendant Clarot. (Doc. 30, at ¶ 58).[4]

> 4 On June 5, 2009, Matrixx's outside counsel had advised the FDA it had provided Matrixx a legal [*8] opinion, based in part on a medical consultant's analysis, that anosmia reports are not SAEs and Matrixx was under no statutory obligation to report. (Doc. 30, ¶ 58; Doc. 32, Ex. 35).

Plaintiffs allege Defendants engaged in a fraudulent scheme to inflate Matrixx's stock price by misrepresenting Matrixx had complied with FDA regulations and the Act's SAE reporting requirement, and by concealing the number of anosmia AERs Matrixx received. (*E.g.*, Doc. 30, ¶ 6, 90). Specifically, "Defendants failed to tell the investing public that: (a) they had received hundreds of AERs from consumers complaining of anosmia; (b) they knew of and reviewed these AERs on a regular basis; and (c) they failed to reveal the existence of the AERs to the FDA as required by federal law." (Doc. 30, ¶ 90). Plaintiffs allege Matrixx made false and misleading statements when it filed financial disclosures, such as 8-Ks, 10-Qs and 10-Ks, that failed to list hundreds of anosmia complaints and instead stated: Matrixx believed it was in compliance with FDA regulations; anosmia complaints were unfounded; and there were no reports of injury or illness linked to Zicam. (Doc. 30, ¶ 62-80).

## ANALYSIS

### A. Standard

Under *Rule 12(b)(6)*, [*9] a complaint must be dismissed if it "fail[s] to sate a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. A complaint must allege facts to state a plausible basis for relief. *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.; see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)*. "Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Verifone Sec. Litig., 11 F.3d 865, 868 (9th Cir. 1993)*. The Court accepts Plaintiffs' allegations as true and construes them in the light most favorable to Plaintiffs. *Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 989 (9th Cir. 2009)*.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 129 S. Ct. at 1949 (2009)* [*10] (quoting *Twombly, 550 U.S. at 570 (2007))*. It is not enough to plead facts "that are 'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly, 550 U.S. at 570)*. Instead, a complaint must set forth facts "nudg[ing] [a plaintiff's] claims across the line from conceivable to plausible." *Twombly, 550 U.S. at 570*.

Claims under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), *15 U.S.C. §§ 78u-4, 78u-5 et seq.*, are held to a heightened pleading standard. The PSLRA requires plaintiffs plead with particularity[5] each material statement upon which liability is based and, if based on information and belief, all facts on which a belief is formed. *15 U.S.C. § 78u-4(b)(1)*; *Ronconi v. Larkin, 253 F.3d 423, 437 (9th Cir. 2001)*. Similarly, the PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2)*.

> 5 *See also Fed. R. Civ. P. 9(b)* (a plaintiff must plead fraud with particularity); *In re Daou Sys., Inc. Sec. Litig., 411 F.3d 1006, 1027 (9th Cir. 2005)* (same).

A court need not accept as true "allegations that contradict matters properly subject to judicial [*11] notice or by exhibit." *Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001)*. The Court may consider documents attached to the complaint or incorporated by reference in the complaint, or matters of public record, without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie, 342 F.3d 903, 907-08 (9th Cir. 2003)*; *Strategic Dev. & Contr., Inc. v. 7th & Roosevelt Partners, LLC, 224 Ariz. 60, 578 Ariz. Adv. Rep. 42, 226 P.3d 1046, 1050 (Ariz. Ct. App. 2010)*; *Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006)*.

### B. Defendants' Motion to Dismiss Will Be Denied

"Section 10(b) of the Exchange Act, *15 U.S.C. § 78j(b)*, in combination with SEC *Rule 10b-5*, prohibits 'any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.'" *Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1164 (9th Cir. 2009)* (quoting *17 C.F.R. § 240.10b-5(c))*. To allege a violation of *Rule 10b-5*, "a plaintiff must [allege] '(1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, [*12] and (5) economic loss.'" *Id.* (quoting *In re Daou Sys., Inc. 411 F.3d 1006, 1014 (9th Cir. 2005))*.

Case 1:09-cv-11267-GAO   Document 96-3   Filed 01/18/12   Page 5 of 7

Page 4
2011 U.S. Dist. LEXIS 111159, *

**1. Misleading Statement or Omission**

The PSLRA requires a complaint to "specify each statement [or omission] alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information or belief, the complaint shall state with particularity all facts on which that belief is formed." *15 U.S.C. § 78u-4(b)(1)*. A statement is misleading under this standard if it would give a reasonable investor the "impression of a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th Cir. 2008)* (quoting *Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002)).* The PSLRA requires Plaintiffs to specify each allegedly misleading material statement and state the "reasons why it is misleading." *15 U.S.C. § 78u-4(b)(1)*.

Plaintiffs have specifically alleged Defendants' misleading statements and omissions regarding the 800 anosmia reports. In particular, Plaintiffs point to financial disclosures in which Matrixx stated, "lawsuits [*13] . . . alleging . . . Zicam . . . caused the permanent loss or diminishment of the sense of smell or smell and taste" were "scientifically unfounded and misleading." (Doc. 30, ¶ 46) (emphasis added). Plaintiffs cite Matrixx's risk disclosures which state, "we believe our products and claims comply in all material respects with the regulatory requirements." (Doc. 30, ¶ 29, 69). Plaintiffs allege these and similar statements identified in the Complaint were made with the knowledge that Matrixx had received an additional 800 anosmia AERs that constituted SAEs. Based on these facts, Plaintiffs allege the company's financial results "failed to disclose receiving any reports of serious adverse events involving . . . Zicam" in violation of FDA regulations. (Doc. 30, ¶ 63-67, 70-78, 81). Plaintiffs' allegations of misleading statements and omissions "identify which statement is made misleading by defendants' omission." *Anderson v. Abbott Labs., 140 F. Supp. 2d 894, 903-04, 909 (N.D. Ill. 2001)*. They give the "impression of a state of affairs that differs in a material way from the one that actually exists." *Berson, 527 F.3d at 985*. As such, they satisfy the PSLRA pleading standard.

In *Siracusano,* [*14] the plaintiffs alleged the defendants[6] were aware of numerous anosmia events, but failed to disclose the risk and instead issued misleading statements. *585 F.3d at 1170*. In *Siracusano,* the company submitted a 10-Q that warned of the hypothetical danger of product liability lawsuits without revealing the consumer complaints or lawsuit. *Id.* This was "misleading because it spoke of the risk of product liability actions against the company without revealing that a lawsuit already had been filed." *Id.*[7] Further, the company responded to a news story about anosmia and Zicam with a press release stating the link was "completely unfounded and misleading." *Id. at 1182*. As the *Siracusano* defendants were learning more information about consumer complaints, medical opinions and university studies linking Zicam to anosmia, they continued to upwardly revise the company's financial projections. *Id. at 1172-74*. The Ninth Circuit held the plaintiffs alleged sufficient facts to show a material misstatement or omission.

> 6  Here, Plaintiffs have named the same defendants named in the *Siracusano* case. The class period in *Siracusano* was from October 22, 2003 to February 6, 2004. *Id. at 1170*.
> 7  Here, Defendants [*15] assert the forward-looking statement defense. However, a statement about a present belief of compliance can be misleading, and is not protected under the forward-looking statement defense, where it fails to disclose known risks material to the company. E.g., *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920 (9th Cir. 2003)*.

Here, as in *Siracusano,* Defendants withheld information regarding hundreds of anosmia reports. While Defendants revealed certain lawsuits and complaints, they allegedly withheld hundreds of additional anosmia complaints. In *Siracusano,* the Ninth Circuit held, "[w]ithholding reports of adverse effects of and lawsuits concerning the product responsible for the company's remarkable sales increase is 'an extreme departure from the standards of ordinary care' and 'presents a danger of misleading buyers and sellers.'" *Id. at 1182* (quoting *In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 976 (9th Cir. 1999))*. As alleged, Defendants' statements and omissions were materially misleading, and not simply incomplete. *Id.; Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002)* (only "misleading and untrue [*16] statements [are actionable], not statements that are incomplete" since "[n]o matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not.").

In *Berson,* the company touted its own financial forecast based on income expected from back orders even though the company knew a significant portion of the back orders were cancelled. *Berson, 527 F.3d at 984*. Although the company in *Berson* was not obligated to disclose the backlog, "once defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what that backlog consisted of." *Id. at 987*. As in *Berson,* here, Defendants withheld information a reasonable investor would deem important. Defendants made statements about the safety of their product, but withheld information regarding hundreds of additional anosmia reports. Defendants

Case 1:09-cv-11267-GAO Document 96-3 Filed 01/18/12 Page 6 of 7

Page 5
2011 U.S. Dist. LEXIS 111159, *

dismissed anosmia complaints as unfounded, stated Matrixx was in compliance with FDA regulations, stated there were "no reports of injury or illness," and touted Matrixx's success defending the lawsuits. Plaintiffs have adequately alleged Matrixx misled the investing public [*17] by making misleading statements or omissions. *Berson, 527 F.3d at 987*; *see also In re Elan Corp. Sec. Litig., 543 F. Supp. 2d 187, 208 (S.D.N.Y. 2008)* ("By choosing to speak about the safety of [their drug], Defendants assumed a duty to disclose material information regarding adverse events.").

Defendants' past disclosures do not excuse subsequent misleading statements and omissions. Further, the fact that the unreported anosmia complaints are numerous does not mean they are too general to satisfy the PSLRA. At the pleading stage, the allegations in the Complaint are construed in the light most favorable to Plaintiffs. Plaintiffs have pled material misstatements or omissions with the required particularity.

**2. Scienter**

To properly plead scienter under the PSLRA, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)(2)*. Plaintiffs must allege "defendants made false or misleading statements either intentionally or with deliberate recklessness'" *Zucco, 552 F.3d at 991* (quoting *Daou, 411 F.3d at 1015*). Deliberate recklessness is defined as "a highly unreasonable omission, involving . . [*18] . an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Silicon Graphics, 183 F.3d at 995* (quoting *Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1569 (9th Cir. 1990)* (en banc)).

"[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 310, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)*. A complaint sufficiently pleads scienter "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id. at 324*. Courts review the particular allegations standing alone, then "conduct a 'holistic' review of the same allegations." *Id. at 992*.

Plaintiffs allege Defendants boasted "no reports of injury or illness involving the affected products" and simultaneously withheld more than 800 AERs regarding anosmia. Plaintiffs allege Matrixx's financial disclosures misled investors by stating anosmia complaints are "scientifically [*19] unfounded and misleading," and Matrixx's risk disclosures misled investors by stating its products and claims reporting "comply in all material respects with the regulatory requirements." (Doc. 30, at ¶¶ 29, 46, 69). Plaintiffs contrast this with the hundreds of unreported anosmia complaints received by Matrixx.

Here, like *Siracusano,* Plaintiffs properly alleged scienter by alleging: Defendants knew about the problems with anosmia and Zicam but chose not to reveal them; Defendants vouched for Zicam's safety anyway; and Zicam's importance to the company's business, which support an inference Defendants intentionally withheld the damaging information. *Id. at 1180-81*.

Plaintiffs also rely on *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp., 320 F.3d 920 (9th Cir. 2003)* ("*America West*"). In *America West,* the defendants delayed maintenance and therefore deferred the costs of such repairs, then engaged in a series of misrepresentations about the company's operational expenses and maintenance record, overstated the company's financial condition to drive up stock prices, made false statements about FAA investigations regarding the maintenance issues, and [*20] engaged in insider trading while stock prices were inflated by the withheld information. Similarly, here, Plaintiffs allege Defendants received and reviewed hundreds of anosmia complaints, but Defendants intentionally or recklessly concealed the anosmia complaints rather than disclose them to the FDA and investors. Plaintiffs allege Defendants attempted to bolster the perceived financial strength of the Company by hiding a risk reasonable investors would deem important. This was "an extreme departure from the standards of ordinary care" and "presented a danger of misleading buyers and sellers." *Silicon Graphics, 183 F.3d at 976*. The inference of scienter is "cogent and at least as compelling" as any "plausible nonculpable explanation[]" for Defendants' conduct. *Tellabs, 551 U.S. at 324*.

Plaintiffs have alleged facts showing a strong inference the Defendants acted with the required state of mind.

**3. Loss Causation**

Plaintiffs allege a severe, nearly instantaneous drop in Matrixx's stock price when the additional hundreds of anosmia reports were revealed. As Defendants argue, this coincided with Matrixx pulling the products from the shelf due to FDA testing requirements. Those testing requirements, [*21] however, were due to the discovery of hundreds of unreported anosmia complaints. As such, the reason for the sudden decrease in stock price can be directly traced to the FDA shining light on the hundreds of anosmia reports Defendants previously dismissed as

"unfounded" and in compliance with FDA regulations. While information already known to the market cannot constitute a corrective disclosure, *Greenberg v. Crossroads Sys., Inc., 364 F.3d 657, 663 (5th Cir. 2004)*, the market did not know about these hundreds of anosmia complaints. Plaintiffs have pled loss causation.

**4. Defendants Clarot and Cowley**

Defendants argue, in the alternative, the claims against Defendants Clarot and Cowley should be dismissed. Cowley has served as the Executive Vice President, Business Development, General Counsel and Secretary of Matrixx since May 2008. (Doc. 30, ¶ 15). He has served on the Board of Directors since July 2005. (Id.). Clarot has served as the Vice President of Research and Development at Matrixx since January 2004, and previously served as the Director of Research and Development from June 2003 through January 2004, and Director of Operations from 2001 through June 2003. (Doc. 30, ¶ 16).

Defendants [*22] correctly point out scienter must be pled with specificity against each Defendant. *15 U.S.C. § 78u-4(b)(2)*. Plaintiffs, however, have alleged Clarot and Cowley participated in the day-to-day operations of Matrixx *and* had actual knowledge of the hundreds of anosmia complaints. (Doc. 30, ¶ 19-23). For example, Plaintiffs allege the individual defendants were given copies of the misleading documents and had the ability and opportunity to correct them. (Id.). The individual defendants had authority and control of the contents of Matrixx's reports, press releases and presentations to securities analysts. (Id.). Plaintiff has alleged the individual Defendants are "controlling persons" under *Section 20(a)* of the Exchange Act. (Doc. 30, ¶ 14-23, 121-124).

Further, Plaintiffs allege Defendant Clarot was intimately involved in Matrixx's complaint process and the FDA inspection. (Doc. 30 ¶ 39-45). Indeed, Clarot reviewed the complaint database "on a regular basis." (Doc. 30, ¶ 43). Clarot responded directly to at least one customer complaint of anosmia by stating Matrixx "do[es] not consider [his] concerns trivial, and the comments and questions our customers provide to us either directly or through [*23] the FDA are essential to our understanding of the perception of our products and our company." (Doc. 30, ¶ 39). Defendants also contend they decided not to report anosmia complaints as AERs based on an opinion provided by an outside law firm, which itself relied on an undated memorandum written by a clinician and addressed to Defendant Clarot. (Doc. 30, at ¶ 58). Clarot also provided the FDA inspector with information. (Doc. 30, ¶ 41).

These facts allege Clarot and Cowley's involvement in the false or misleading statements or omissions, and are therefore sufficient to state a claim against these individual defendants.

Accordingly,

**IT IS ORDERED** Defendants' motion to dismiss **(Doc. 31)** is **DENIED.**

DATED this 26th day of September, 2011.

/s/ Roslyn O. Silver

Roslyn O. Silver

Chief United States District Judge