**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **In re: Genzyme Corporation Securities Litigation** | Consolidated<br>No. 09-cv-11267 (GAO)<br><br>**ORAL ARGUMENT REQUESTED** |

**INDIVIDUAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RELIEF FROM FINAL JUDGMENT UNDER RULE 59 TO AMEND ORDER AND JUDGMENT OF MARCH 30, 2012, TO PROVIDE FOR DISMISSAL WITHOUT (RATHER THAN WITH) PREJUDICE, AND TO GRANT LEAVE TO FILE AMENDED COMPLAINT UNDER RULE 15**

John D. Hanify, BBO# 219880
Michael T. Marcucci, BBO#  652186
JONES DAY
100 High Street
Boston, MA  02110-1781
Telephone:  (617) 960-3939
Facsimile:   (617) 449-6999

*Counsel for Individual Defendants*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

I.  PLAINTIFFS DO NOT PROVIDE A SEPARATE BASIS TO VACATE THE
    JUDGMENT IN FAVOR OF THE INDIVIDUAL DEFENDANTS .............................. 2

    A.  No Error in the March 30 Order Justifies Vacating the Judgment in Favor
    of the Individual Defendants................................................................................. 2

    B.  Plaintiffs' Newly Discovered Evidence is Not New and Does Not Justify
    Vacating the Judgment in Favor of the Individual Defendants Under Rule
    59............................................................................................................................. 4

        1.  The New Confidential Witness Statements are Duplicative,
        Immaterial, and Do Not Provide a Basis to Overturn the Court's
        Holding that the Individual Defendants Lacked Scienter ......................... 4

            (a)  The New Confidential Witness Statements About What
            "Management" Knew are Inadequate to Establish Scienter
            Against the Individual Defendants................................................. 6

            (b)  The New Confidential Witness Statements Do Not
            Remotely Establish Scienter Against Mr. Termeer ...................... 9

II. PLAINTIFFS' PROPOSED AMENDED COMPLAINT FAILS TO STATE A
    SECTION 10(b) CLAIM AGAINST ANY OF THE INDIVIDUAL
    DEFENDANTS AND SHOULD BE DENIED AS FUTILE......................................... 10

    A.  The PAC Does Not Remedy the Lack of Scienter............................................... 11

    B.  Plaintiffs Fail to Cure the Other Deficiencies Identified in the Individual
    Defendants' Motion to Dismiss .......................................................................... 11

        1.  The PAC Impermissibly Relies on the Group Pleading Doctrine ........... 11

        2.  Plaintiffs Cannot Plead Section 20(a) Control Person Liability for
        Any of the Individual Defendants............................................................. 12

    C.  Plaintiffs Eliminate the only Actionable Statement by Dr. Meeker, so
    Amendment would be Futile for Any Claims Against Him ................................ 13

CONCLUSION.................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Applestein v. Medivation, Inc.*,
  No. C–10–0998 EMC, 2012 WL 986276 (N.D. Cal. Mar. 22, 2012) .......................................6

*Baker v. MBNA Corp*,
  C.A. No. 05-272 (GMS), 2007 WL 2009673 (D. Del. July 6, 2007) .......................................6

*Contrast Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999)..............................................................................................11

*Dura Pharm. Inc. v. Broudo*,
  544 U.S. 336 (2005)............................................................................................................13

*Ernest & Ernst v. Hochfelder*,
  425 U.S. 185 (1976)..............................................................................................................5

*Fannon v. Guidant Corp.*,
  583 F.3d 995 (7th Cir. 2009) .............................................................................................10

*Foman v. Davis*,
  371 U.S. 178 (1962).............................................................................................................10

*Glassman v. Computervision Corp.*,
  90 F.3d 617(1st Cir. 1996)..................................................................................................10

*Heywood v. Cell Therapeutics, Inc.*,
  No. C05-0396 RSM, 2006 WL 5701625 (W.D. Wash. May 4, 2006) .......................................9

*In re Alkermes Sec. Litig.*,
  No. Civ.A. 03-12091-RCL, 2005 WL 2848341 (D. Mass. Oct. 6, 2005)..........................9, 10

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)................................................................................14

*In re Cabletron Sys. Inc.*,
  311 F.3d 11 (1st Cir. 2002).........................................................................................7, 8, 9

*In re Dothill Sys. Corp. Sec. Litig.*,
  No. 06–CV–228 JLS, 2009 WL 734296 (S.D. Cal. Mar. 18, 2009)....................................5, 6

*In re Harley-Davidson, Inc. Sec. Litig.*,
  660 F. Supp. 2d 969 (E.D. Wisc. 2009)..................................................................................8

*In re Optimal U.S. Litig.*,
    --- F. Supp. 2d ---, 2011 WL 642988 (S.D.N.Y. Dec. 21, 2011)............................................12

*In re Stone & Webster, Inc. Sec. Litig.*,
    414 F.3d 187 (1st Cir. 2005) ............................................................................................12, 13

*Janbay v. Canadian Solar, Inc.*,
    No. 10 Civ. 4430(RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...............................11

*Janus Capital Grp., Inc. v. First Derivative Traders*,
    ---U.S.---, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011) .........................................................11, 12

*Limantour v. Cray, Inc.*,
    432 F. Supp. 2d 1129 (W.D. Wash. 2006).................................................................................5

*McCasland v. FormFactor, Inc.*,
    No. C 07–5545 SI, 2008 WL 2951275 (N.D. Cal. July 25, 2008) ............................................5

*Neurontin Mkting and Sales Prac. Litig.*,
    799 F. Supp. 2d 110 (D. Mass. 2011) .......................................................................................4

*Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig.*,
    Nos. 10–CV–4093 (DLI)(JMA), 10–CV–4104 (DLI)(JMA), 2012 WL 1067975
    (E.D.N.Y. Mar. 29, 2012) ........................................................................................................12

*Raymond v. Raymond Corp.*,
    938 F.2d 1518 (1st Cir. 1991)....................................................................................................4

*SEC v. Tambone*,
    597 F.3d 436 (1st Cir. 2010) ...................................................................................................13

*Solow v. Citigroup, Inc.*,
    --- F. Supp. 2d ---, 2011 WL 5869599, at *10 (S.D.N.Y. Nov. 22, 2011)...............................12

*Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) .....................................................................................................2

*Wells v. Monarch Capital Corp.*,
    No. 91-10575-MA, 1991 WL 354938 (D. Mass. Aug. 23, 1991) ...........................................14

## PRELIMINARY STATEMENT

Mark R. Bamforth, Alison Lawton, Geoffrey McDonough, David P. Meeker, Henri A. Termeer, and Michael S. Wyzga ("the Individual Defendants") join in Genzyme's Opposition. These Individual Defendants also offer additional reasons why the judgment in favor of the Individual Defendants should not be vacated, and leave to amend should be denied.

There was no material error in the Court's Opinion.  Instead, Plaintiffs use this present motion as pretext to confound these proceedings with yet another  mountain of misleading, inconsistent, and conclusory allegations that fail to withstand careful scrutiny.  Plaintiffs' motion adds nothing of substance to Plaintiffs' earlier-discredited theory of fraud by hindsight.

With respect to the Individual Defendants, Plaintiffs do not show how correction of any alleged error in the Court's decision would give rise to a cogent and compelling inference that any one, much less all, of the Individual Defendants had an intent to defraud.  The so-called "newly discovered evidence," could have been mustered well before the Court's decision, and the confidential witness statements are ineffectual because they are not based on specific information personally known to the witnesses and virtually silent on any direct connection to the contemporaneous knowledge of Individual Defendants.

Nothing in the Proposed Amended Complaint ("PAC") cures the fatal flaws in the Complaint identified by the Court's March 30 Order ("Order"), and in the Individual Defendants' Motion to Dismiss.  Amendment would be futile.  Moreover, as to Dr. Meeker, no amendment could be allowed, since in his case Plaintiffs' PAC eliminates the only actionable statement made by him during the original class period.

## I.   PLAINTIFFS DO NOT PROVIDE A SEPARATE BASIS TO VACATE THE JUDGMENT IN FAVOR OF THE INDIVIDUAL DEFENDANTS.

Plaintiffs identify two grounds to vacate the Court's March 30 Order:  (i) an alleged manifest error by the Court in its finding that the February 2009 Complete Response Letter did not make reference to the October 2008 Form 483 and; (ii) purportedly newly discovered confidential witness statements.  *See* Pls.' Mem. at 5-16.  Genzyme's Opposition to Plaintiffs' Rule 59(e) motion thoroughly explains how neither ground justifies relief from the Court's final judgment.  Here, the Individuals Defendants address the Plaintiffs' inability to establish any separate grounds for relief from the final judgment in favor of the Individual Defendants.

Just as they must establish a Section 10(b) claim against each Individual Defendant, Plaintiffs must also now provide a compelling basis to vacate the judgment in favor of each Individual Defendant.  *See Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004).  Plaintiffs cannot satisfy this burden.

### A.   No Error in the March 30 Order Justifies Vacating the Judgment in Favor of the Individual Defendants.

The thrust of Plaintiffs' manifest error argument is that the Court did not appreciate that the FDA's 2009 February Complete Response Letter, which addressed the Lumizyme BLA, actually mentioned the cGMP issues identified in the October 2008 FDA Form 483.  *See* Pls.' Mem. at 6-7.  Plaintiffs contend that had the Court appreciated this, the Court would have held that the October 2008 Form 483 was material.  *See* Pls.' Mem. at 8-9.  From that questionable assumption, Plaintiffs then extrapolate a bounty of alleged information regarding the negative prospects of Lumizyme approval, and Allston plant contamination.  *Id.* at 10-12.  Of course, as Genzyme's brief makes clear, the Court made no error.  Even if it had, the correction of any such alleged error would not justify the reinstatement of the Section 10(b) claims against the Individual Defendants.

In fact, Plaintiffs cite just one set of statements by the Individual Defendants, in an October 2008 conference call, that is implicated by the alleged error.  *See* Pls.' Mem. at 9. Plaintiffs contend that if the Court had not made this asserted factual error, the Court would have held that during an October 2008 conference call, Ms. Lawton, Mr. Termeer, and Dr. McDonough made statements they knew were false.

However, any asserted connection between the February 2009 Complete Response Letter and the earlier 2008 FDA inspection does not render the October Form 483 material.  The February 2009 letter did not change what was in the minds of Ms. Lawton, Mr. Termeer, and Dr. McDonough five months earlier during the October 2008 conference call.  At that time, the only pertinent information in the possession of these three Individual Defendants was the existence of the FDA inspection and the Form 483.  As this Court correctly noted, the October Form 483, by itself, is "of doubtful materiality."  *See* Order at 17.

Plaintiffs cite no further evidence that would establish that any of these three Individual Defendants knew at the time of that October 2008 conference call that the FDA would deny the Lumizyme BLA in 2009, or even that the PDUFA date would be postponed from November 2008 until February 2009.  *See* Order at 6.  Plaintiffs offer no factual bases for the Court to change its holding that Ms. Lawton, Mr. Termeer, and Dr. McDonough did not have an intent to defraud in October 2008.

Instead, Plaintiffs entire "manifest factual error" remains premised on the same "fraud-by-hindsight" theme that thoroughly infected the Plaintiffs' Complaint, and was rejected by this Court.  *See* Order at 20 ("The allegations in this respect amount to fraud by hindsight.). Moreover, Plaintiffs cite no other or additional statements by any of the Individual Defendants that are implicated by the Court's alleged "error."  No such allegation is tenable since following

receipt of the February 2009 Complete Response Letter, the Company disclosed the existence of the October Form 483, rendering Plaintiffs' arguments on this point moot and immaterial. *See* Order at 8.

> **B.**    **Plaintiffs' Newly Discovered Evidence is Not New and Does Not Justify Vacating the Judgment in Favor of Individual Defendants Under Rule 59.**

Plaintiffs' second ground to vacate the judgment against the Individual Defendants is newly discovered evidence. *See* Pls.' Mem. at 12-16. Like the correction of any supposed error, Plaintiffs' alleged newly discovered evidence does not prove scienter against any of the Individual Defendants. In assessing a new evidence claim under a Rule 59(e) motion, courts require that the movant show: "(1) The evidence has been discovered since the trial; (2) The evidence could not by due diligence have been discovered earlier by the movant; (3) The evidence is not merely cumulative or impeaching; and (4) The evidence is of such nature that it would probably change the result if a new trial is granted." *Neurontin Mkting and Sales Prac. Litig.*, 799 F. Supp. 2d 110, 113 (D. Mass. 2011) (quoting *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1527 (1st Cir. 1991)).

Here, Plaintiffs' "new" confidential witness statements do not in fact constitute new evidence, and in any event, they do not justify vacating the judgment in favor of the Individual Defendants under Rule 59.

> **1.**    **The New Confidential Witness Statements are Duplicative, Immaterial, and Do Not Provide a Basis to Overturn the Court's Holding that the Individual Defendants Lacked Scienter.**

The new confidential witnesses fail to cure the fatal defects in Plaintiffs' Complaint against the Individual Defendants – most glaring of all, they persist in a notable lack of particularized allegations establishing that the Individual Defendants knew, or had reason to know, that their statements were false or misleading at the time made, and that the statements

were made with an intent to deceive the markets.  *See* Order at 21 ("the allegations do not give

rise to a cogent and compelling inference that the defendants withheld disclosure of the disputed

information *not* because they believed the information to be unimportant or its disclosure

unnecessary, but because they understood – and sought to prevent – its likely informative effect

on the market.") (emphasis in original); *see also Ernest & Ernst v. Hochfelder*, 425 U.S. 185,

193, n.12 (1976).  Not a single confidential witness is alleged "to have had any interactions or

communications with any of the [Individual Defendants], or to have provided any of the

[Individual Defendants] with information, or to have heard or read any statement by any

[Individual Defendants], that contradicted or even cast doubt on a public statement made during

the class period."  *McCasland v. FormFactor, Inc*. No. C 07–5545 SI, 2008 WL 2951275, at *8

(N.D. Cal. July 25, 2008).

     Instead, these 13 new confidential witnesses are primarily low-level employees,

providing unreliable, speculative, and conclusory allegations  about general conditions at the

Allston plant that fail to draw  a single, direct or meaningful connection to any Individual

Defendant.  *See In re Dothill Sys. Corp. Sec. Litig.*, No. 06–CV–228 JLS (WMc), 2009 WL

734296, at *13 (S.D. Cal. Mar. 18, 2009) ("[T]here must be sufficient information that would

allow the [Court] to 'be able to tell whether a confidential witness is speaking from personal

knowledge or merely regurgitating gossip and innuendo.'") (quoting *Limantour v. Cray, Inc.*,

432 F. Supp. 2d 1129, 1141 (W.D. Wash. 2006)).  Rather than repeat the arguments in

Genzyme's Opposition on this point, the Individual Defendants focus on the handful of new

confidential witness statements that make either generalized allegations about what

"management" knew, or make claims about information provided to Mr. Termeer.

        **(a)**       **The New Confidential Witness Statements About What**
                          **"Management" Knew are Inadequate to Establish Scienter**
                          **Against the Individual Defendants.**

A few of the new confidential witnesses make general assertions that Genzyme "management" must have been aware of compliance problems at Allston, and therefore the Defendants knew they were lying about the prospect of Lumizyme approval. *See e.g.*, Pls.' Mem. at 14.  However, these confidential witness statements lack any specificity about the state of Individual Defendants' knowledge.  The statements are self evidently not based on the witnesses' personal knowledge, and fail to identify how or why the Individual Defendants would have known at the time that any of their statements were false or misleading.

For example, CW #3 alleges that "Genzyme management was aware of issues at Allston before the FDA sent its warning letter."  PAC ¶ 46.  This witness statement is an assertion unsupported by facts, disassociated from any Individual Defendant and cannot establish, as a matter of law, scienter against any of the Individual Defendants.  *See Baker v. MBNA Corp*, C.A. No. 05-272 (GMS), 2007 WL 2009673, at *7 (D. Del. July 6, 2007) ("blanket allegations [of scienter] against 'the defendants' and 'management' do not meet particularized requirements of Rule 9(b) or the PSLRA.").

First, such a bald assertion does not explain how CW #3 had a basis to make this observation, or had personal knowledge of this evidence.  *See Applestein v. Medivation, Inc.*, No. C–10–0998 EMC, 2012 WL 986276, at * 8 (N.D. Cal. Mar. 22, 2012) (confidential witness statements lack reliability, in part, because "[p]laintiffs do not explain the basis for each confidential witness's knowledge"); *Dothill*, 2009 WL 734296, at *14 (rejecting allegations of confidential witness that "management" knew product development was delayed because complaint did not explain how witness was in position to "know what management 'all knew'").

This witness does not identify any conversation heard or observed by CW #3, with an Individual Defendant in which any of these issues at Allston were made known to that Individual Defendant.

Plaintiffs also tout the statements of CW #1 as proof that Genzyme management was aware of facts rendering public statements by Defendants false at the time the statements were made.  *See* Pls.' Mem. at 14.  CW #1 worked at Genzyme for over a decade at various positions relating to manufacturing at Allston, and alleges that "management" received minutes of FDA inspections that described "the inspector's focus and potential follow-up items."  PAC ¶ 47.  CW #1 contends that daily reports, created during the May 2009 FDA inspection "were also circulated directly to the very highest levels of the Company, … the Alison Lawtons, the David Meekers, and the Mark Bamforths of the Company."  *Id.* ¶ 147.  Plaintiffs then leap to an allegation that the Defendants, including all Individual Defendants, knew the Lumizyme BLA would never be approved because the deficiencies identified by the FDA were never rectified. *See* Pls.' Mem. at 14; PAC ¶ 14.  Although the Rule 59(e) motion is silent on this point, the PAC adds an allegation that because of these FDA minutes, Ms. Lawton knew that her May 2009 statements regarding the nature of the May 2009 FDA inspection, and her description of a conversation with the FDA inspector were false at the time they were made.  *See* Comp. ¶¶ 304-305; Pls.' Mem. at 11; PAC ¶ 147.  However, the allegations are insufficient to prove scienter for several important reasons.

First, CW #1's allegations on their face lack the required specificity to establish that the witness was in any position to have personal knowledge about what information individuals within Genzyme management supposedly received or knew.  *See In re Cabletron Sys. Inc.,* 311 F.3d 11, 30-31 (1st Cir. 2002) (for the allegations of a confidential witness to be reliable the

complaint must establish, *inter alia*, "personal knowledge" and a "strong basis of knowledge" of the facts alleged).  Moreover, claiming that "the Alison Lawtons … of the world" or "management" received a document is well short of the particularized allegations required to show scienter with respect to Individual Defendants.  CW #1 offers no insight into what specific information was contained in these minutes, whether that information was actually reviewed by any Individual Defendant, how that information rendered statements by Individual Defendants false, or how that information gave Individual Defendants a basis to know statements they subsequently made would be false or misleading.  *See In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 999 (E.D. Wisc. 2009) (vague claims of inventory issues being raised at meeting and "mere receipt of reports insufficient to establish scienter…").  With respect to Ms. Lawton, CW #1, and the PAC do not offer any evidence that Ms. Lawton inaccurately recounted what she was told by the FDA inspector following the May 2009 inspection.  Nor do such allegations explain how these allegedly circulated FDA inspection updates contradicted anything Ms. Lawson said at the time.

Finally, the fact that "management" received updates on FDA inspections is wholly consistent and supportive of this Court's holding of a strong "inference of a nonculpable explanation for the defendants' actions."  Order at 21.  The inference is far more likely that, if such update reports existed, they accurately recounted the results of the inspections, the Company's interaction with the inspectors, and outlined the Company's efforts to address any issues, consistently with the Individual Defendants' public statements at the time.

**(b)      The New Confidential Witness Statements Do Not Remotely
Establish Scienter Against Mr. Termeer.**

Plaintiffs' new confidential witness statements also attempt specific claims against Mr.

Termeer.  First, CW #6 was a secretary for various officials for fifteen years at the Allston plant.

*See* PAC at iii.  According to CW #6, "everything that happened at Allston was reported to

Termeer." *Id.* ¶ 47; *see also id.* ¶ 91.  Such hyperbole is self-evidently unreliable.  Plaintiffs

provide no basis to explain how CW #6, who worked at a different location and did not work for

or report to Mr. Termeer, could somehow be situated to know what reports Mr. Termeer actually

received about Allston.  *See In re Cabletron,* 311 F.3d at 30-31.  More importantly, the

statements by CW #6 on their face fail to explain what specific information was reported to Mr.

Termeer, or how that information would have informed Mr. Termeer that something he said

during the class period was false.  This type of generalized statement of an all-knowing CEO is

not only unbelievable, but routinely rejected by courts.  *See e.g., Heywood v. Cell Therapeutics,

Inc.*, No. C05-0396 RSM, 2006 WL 5701625, at *5 (W.D. Wash. May 4, 2006) (confidential

witness's "generalized and speculative statements" that CEO "knew everything" about

company's drug trial does not meet particularity requirement).

Next, CW #7 alleges that Mr. Termeer attended all FDA inspection closeout meetings.

*See* PAC ¶ 47.  CW #7, however, left Genzyme in 2006, two years before the first relevant FDA

inspection and thus could have no personal knowledge of Mr. Termeer's attendance at any

inspection meetings relating to Allston during the class period.  *See* PAC at iii.  Without personal

knowledge (or even a basis for hearsay), CW #7's assertions about Mr. Termeer are simply

unreliable.  *See In re Alkermes Sec. Litig.*, No. Civ.A. 03-12091-RCL, 2005 WL 2848341, at

*15, n.12 (D. Mass. Oct. 6, 2005) (based on allegations of confidential witness that was not

employed during time of incident, "it is questionable whether the Plaintiffs' allegations met the

requisite particularity requirements."). Mr. Termeer's attendance at a FDA inspection closeout meeting does not create an inference of scienter, much less a strong one. Moreover, Plaintiffs do not provide the requisite particularity to establish that even if Mr. Termeer did attend such meetings that the information he received would have been inconsistent with anything he said during the class period.

Neither of these new confidential witnesses provide any new basis for the Court to find that Mr. Termeer had the requisite state of mind when he made any of the statements attributed to him during the class period. Accordingly, a Rule 59(e) motion for relief from judgment in favor of Mr. Termeer should also be denied.

## II.   PLAINTIFFS' PROPOSED AMENDED COMPLAINT FAILS TO STATE A SECTION 10(b) CLAIM AGAINST ANY OF THE INDIVIDUAL DEFENDANTS AND SHOULD BE DENIED AS FUTILE.

In addition to seeking to vacate  the Court's March 30 Order under Rule 59(e), Plaintiffs also seek leave to amend the Complaint. Because judgment has been entered, Plaintiffs must meet a far heavier burden. First, they must satisfy the "manifest error" test of Rule 59 (e), which they cannot do in this case. That burden is not eased, as the Plaintiffs inaccurately imply, by the fact that this pleading exercise relates to a motion to amend the Complaint. The test of 59(e) remains unchanged and here represents an obstacle to any amendment. *See Fannon v. Guidant Corp.*, 583 F.3d 995, 1002-03 (7th Cir. 2009). However, even if judgment had not entered, the plaintiffs would not be able to escape the utter futility of their proposed amendment. While amendments are generally liberally allowed, a motion for leave to amend should be denied when amendment would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). "Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

### A.      The PAC Does Not Remedy the Lack of Scienter.

As explained earlier, the PAC does not overcome the bases for the Court's March 30 scienter holding.  Moreover, while not addressed by the Court's March 30 Order, Plaintiffs' PAC cannot account for the absence of any motive on the part of the Individual Defendants to engage in the fraudulent scheme that Plaintiffs claim occurred here.  For example, not a single Individual Defendant is alleged to have made any unusual sales of Genzyme stock during the class period. *See Contrast Greebel v. FTP Software, Inc.*, 194 F.3d 185, 197-98 (1st Cir. 1999).  The absence of motive strengthens the inference of no scienter against all Individual Defendants.  *See Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430(RWS), 2012 WL 1080306, at *11 (S.D.N.Y. Mar. 30, 2012) ("Where a complaint fails to allege motive, the strength of the circumstantial allegations of conscious misbehavior or recklessness must be correspondingly greater.") (internal quotations omitted).  Without any evidence of improper motive, Plaintiffs' PAC cannot withstand greater scienter scrutiny.

### B.      Plaintiffs Fail to Cure the Other Deficiencies Identified in the Individual Defendants' Motion to Dismiss.

#### 1.      The PAC Impermissibly Relies on the Group Pleading Doctrine.

Beyond scienter, the PAC still contains the range of  defects identified in the Individual Defendants' Motion to Dismiss.  Most notably, Plaintiffs continue to rely on the doctrine of group pleading against some of the Individual Defendants.  Not only was group pleading impermissible when the Individual Defendants filed their Motion to Dismiss, *see* Memorandum in Support of Individual Defendants' Motion to Dismiss (Dkt. No. 66) at 3-5, the doctrine has since lost further legitimacy following the Supreme Court's decision in *Janus Capital Grp., Inc. v. First Derivative Traders*, ---U.S.---, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011).  In this decision, the Supreme Court held that an investment advisor was not liable for misstatements regarding a

mutual fund that were contained in the investment advisor's prospectus because the mutual fund

retained "ultimate authority" over the content of the prospectus.  *See* 131 S.Ct. at 2302.  Since

this decision, courts have questioned the continued vitality of the group pleading doctrine.  *See*

*e.g.*, *Orlan v. Spongetech Delivery Sys., Inc., Sec. Litig.*, Nos. 10–CV–4093 (DLI)(JMA), 10–

CV–4104 (DLI)(JMA)*,* 2012 WL 1067975, at *10 (E.D.N.Y. Mar. 29, 2012) ("While the group

pleading doctrine apparently was 'alive and well' in this circuit prior to *Janus*, it is uncertain

whether it survived ."); *In re Optimal U.S. Litig.*, --- F. Supp. 2d ---, 2011 WL 642988, at *11

(S.D.N.Y. Dec. 21, 2011) (noting that "*Janus* calls into question the viability of the group

pleading doctrine for federal securities law claims").

> ### 2.      Plaintiffs Cannot Plead Section 20(a) Control Person Liability for Any of the Individual Defendants.

The PAC also includes the same deficient control-person-liability pleading against the

Individual Defendants.  To state a claim for control person liability under Section 20(a), a

plaintiff must show:  "(i) an underlying violation of the same chapter of the securities law by the

controlled entity … and (ii) control of the primary violator by the defendant."  *In re Stone &*

*Webster, Inc. Sec. Litig.*, 414 F.3d 187, 194 (1st Cir. 2005).  Although unresolved by the First

Circuit, other courts also require that a plaintiff establish "that the controlling person was in

some meaningful sense a culpable participant in the alleged fraud perpetrated by the controlled

person."  *Solow v. Citigroup, Inc*., --- F. Supp. 2d ---, 2011 WL 5869599, at *10 (S.D.N.Y. Nov.

22, 2011).  For the same reasons outlined in the Memorandum in Support of Individual

Defendants' Motion to Dismiss, Plaintiffs' PAC falls far short of adequately pleading control

person liability against the Individual Defendants.  *See* Dkt. No. 66, at 20-30.

**C.     Plaintiffs Eliminate the Only Actionable Statement by Dr. Meeker, so Amendment Would be Futile for Any Claims Against Him.**

In an unsuccessful attempt to streamline the allegations, Plaintiffs reduced the class period by a year, moving the start of the class from October 2007 to October 2008.  But in doing so, Plaintiffs eliminated from the class period the only alleged actionable statement by Dr. Meeker - an October 2007 statement that Lumizyme approval was "expected to come in the first quarter of next year."  Comp. ¶ 217.  It is axiomatic that there can be no §10(b) liability without a material misrepresentation or omission.  *See Stone & Webster*, 414 F. 3d at 193 (citing *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).  Without one, any §10(b) claim would fail against Dr. Meeker, so this amendment against him is beyond futile.

Plaintiffs may claim that Dr. Meeker is liable under §10(b) for his silence while others made alleged misstatements, or under a theory of group pleading.  Neither provides a basis for liability against Dr. Meeker.  As explained in the Reply Memorandum in Support of the Individual Defendants' Motion to Dismiss, securities law cannot support a claim of individual liability for failing to correct the statements of others, especially when that party is not alleged to have made any statement.  *See* Dkt. No. 73, at 10-13.  Liability for silence is inconsistent with the language of Rule 10b-5 that states it is unlawful "to *make* any untrue statement of a material fact or to omit to state a material fact necessary in order to make *the statement made* … not misleading."  17 C.F.R. § 240.10b-5 (emphasis added); *see also SEC v. Tambone*, 597 F.3d 436, 447-48 (1st Cir. 2010).

Similarly, as noted above, group pleading cannot be the basis for liability against Dr. Meeker.  *See supra,* at 11-12; *see also* Dkt. No. 66, at 3-4.  Here, Plaintiffs' PAC contains no allegations connecting Dr. Meeker to any of the specific published statements made by the

Company identified in the PAC.  Accordingly, there is no conceivable basis upon which he could be liable for any alleged misstatements or omissions in the Company's public filings or press releases.

Lastly, the PAC fails to plead control person liability against Dr. Meeker.  The PAC is particularly devoid of the required specificity to plausibly infer control by Dr. Meeker.  Plaintiffs rely almost exclusively on his title as Executive Vice President.  *See Wells v. Monarch Capital Corp.*, No. 91-10575-MA, 1991 WL 354938, at *12 (D. Mass. Aug. 23, 1991) (the court noted company officers "titles alone … without more specific allegation are insufficient to state a claim under § 20(a)").  Besides this, Plaintiffs regurgitate formulaic and conclusory allegations of control by Dr. Meeker.  *See* PAC ¶ 232.  "However, a plaintiff cannot simply base a control person claim on boilerplate allegations; instead, the plaintiff must provide some factual support which indicates the control person defendant was in a position to control a primary violator."  *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 730 (W.D. Tex. 2010).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for relief from the Court's final judgment and for leave to amend the Complaint should be denied.

Respectfully submitted,

MARK R. BAMFORTH, ALISON
LAWTON, GEOFFREY MCDONOUGH,
DAVID P. MEEKER, HENRI A. TERMEER
AND MICHAEL S. WYZGA

By their attorneys


/s/ Michael T. Marcucci
_____

John D. Hanify, BBO# 219880
Michael T. Marcucci, BBO#  652186
JONES DAY
100 High Street
Boston, MA  02110-1781
Telephone:  (617) 960-3939
Facsimile:   (617) 449-6999
mmarcucci@jonesday.com
Counsel for Individual Defendants


Dated: May 11, 2012

**<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing document was filed this 11th day of May 2012 through the

Court's CM/ECF system, which will serve a copy upon counsel of record  listed in the Notice of

Electronic Filing.  I am not aware at this time of counsel of record who require paper copies.



<u>/s/ Michael T. Marcucci</u>

Michael T. Marcucci